Yuriy Orestovich SHPIKULA,
Appellant,

v.

The STATE of Texas, Appellee.

No. 01–00–01208–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 17, 2002.

Discretionary Review Refused
April 10, 2002.

Robert A. Scardino, Jr., Houston, for Appellant.

Kevin P. Keating, Asst. Dist. Atty., Houston, for State.

Panel consists of Justices MIRABAL, NUCHIA, and PRICE.[*]

## OPINION

FRANK C. PRICE, Justice, (Assigned).

A jury found appellant guilty of driving while intoxicated, and the trial court assessed punishment at 180 days in jail, probated for two years. The conditions of appellant's probation included 80 hours of community service, random urinalysis testing, attendance at a victim impact panel, a $50.00 contribution to the Crime Victim's Compensation Fund, five consecutive days confinement in jail, and a $750.00 fine. In six points of error, appellant complains the trial court erred when it: (1) refused to give an exclusionary-rule jury instruction under Texas Code of Criminal Procedure article 38.23; (2) allowed admission of appellant's statements in violation of *Miranda*[1]; (3) limited his right to confront and cross-examine witnesses; (4) refused to suppress the results of his breath test; (5) denied his second motion for continuance; and (6) made postsentence comments regarding appellant's choice to go to trial instead of pleading guilty. We affirm.

### Background

On June 9, 2000, Deputy Ronnie Morrison was off duty and traveling home on Sam Houston Parkway at approximately 11:00 p.m. He saw a car with a broken tail light about a quarter of a mile away and followed it. The car appeared to be speeding. He radioed Deputy J.A. Savell, Jr., the officer who had just relieved him, and related his observations. Deputy Savell responded, and he and Deputy Morrison pursued the car. They ultimately determined its speed to be in excess of 90 miles per hour and observed the car weaving between lanes of traffic several times.

Deputy Savell stopped the car. Deputy Savell approached the car and noticed that appellant, the driver, appeared to be intoxicated. Deputy Savell smelled a strong odor of alcohol coming from the car. Appellant looked bewildered and his eyes were red and puffy, and appeared glassy.

---

[*] The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

He also appeared to have dropped ashes on his clothing, and his head movements were jerky. When Deputy Savell asked appellant for identification, appellant handed the deputy his entire wallet, not just his driver's license.

Deputy Savell asked appellant to step out of the car. As appellant got out, Deputy Savell noticed appellant could not maintain his balance without holding onto a fixed object. When he lost his balance, appellant would laugh and apologize. Deputy Savell asked appellant whether he had been drinking; appellant responded he had had a few drinks with friends earlier in the evening. Deputy Savell then requested that appellant perform field sobriety tests. Appellant failed each test Deputy Savell requested he perform. Based on appellant's performance on the field sobriety tests, Deputy Savell placed him under arrest and took appellant to the Clay Road substation.

At the station, appellant consented to giving a breath sample. Deputy Savell gave appellant his statutory warnings and observed him for 15 minutes before the test. Appellant's first test was unsuccessful because the breath sample he submitted was insufficient for analysis. Because of the insufficient sample, the intoxilyzer invalidated the test. Appellant agreed to a second test, which Deputy Savell also performed. The test showed appellant's alcohol concentration to be .194 grams per 100 milliliters of blood.[2] He also submitted to a videotaped interview. Based on the information he collected, Deputy Savell concluded appellant had been intoxicated while he was driving and charged him with DWI.

Initially, appellant's case was set for trial on August 31, 2000. On August 17, 2000, appellant filed a motion for continuance based on the unavailability of a defense fact witness. The trial court granted this motion on August 25, and reset the case to September 6, 2000.

On August 30, 2000, appellant filed (as the State had previously) a subpoena duces tecum for the technical supervisor and the custodian of records for the intoxilyzer machine that asked for the records on the intoxilyzer to be brought to trial (which was then scheduled for August 31, 2000). Because the trial court continued the trial, the witness did not appear or produce the records in accordance with either the State's or appellant's subpoena. Appellant then filed a motion to compel compliance with the subpoena on September 1, 2000. In his motion, however, he asked that the records be produced at his counsel's office immediately (not that the witness appear at trial with the records). The trial court did not rule on the motion to compel.[3]

On September 5, 2000, appellant filed a second motion for continuance. In his second motion, he advised the trial court his expert witness had been previously scheduled to appear in trials in three other counties during September 6–9 and was not available for trial. Appellant also complained his subpoena had not been answered and he had not been able to provide the information on the intoxilyzer to his expert. The trial court denied the motion.

### *Article 38.23 Instruction*

 In point of error one, appellant argues the trial court erred when it refused

---

2. The Penal Code defines "intoxicated" as having an alcohol concentration of 0.08 or more. TEX PENAL CODE ANN. § 49.01 (Vernon Supp.2002).

3. Appellant's counsel did file a "motion of presentment" of all pretrial motions, which the trial court granted on September 6, 2000; however, the trial court did not specifically rule on the motion to compel.

to give an exclusionary-rule jury instruction under Texas Code of Criminal Procedure article 38.23.[4] Specifically, appellant complains that even though both Deputy Morrison and Deputy Savell testified they observed appellant's tail light was out from a quarter of a mile away, the testimony was unbelievable; therefore, there was a conflict in the testimony regarding whether appellant's detention was legal. Appellant argues the jurors should have been instructed to disregard evidence obtained from the detention if their resolution of any factual dispute showed the detention was illegal.

■ When the issue of the legality of a detention is raised in a DWI prosecution and the facts regarding that detention are in controversy, the trial court is statutorily required to submit an article 38.23 instruction upon request. *Stone v. State*, 703 S.W.2d 652, 655 (Tex.Crim.App.1986); *Stoutner v. State*, 36 S.W.3d 716, 720 (Tex. App.-Houston [1st Dist.] 2001, pet. ref'd). The only question is whether, under the facts of a particular case, the evidence raises an issue so as to require a jury instruction. *Murphy v. State*, 640 S.W.2d 297, 299 (Tex.Crim.App.1982); *Stoutner*, 36 S.W.3d at 720. When the evidence does not raise such an issue, the trial court acts properly in refusing a request to charge the jury. *Murphy*, 640 S.W.2d at 299; *Stoutner*, 36 S.W.3d at 720.

Appellant acknowledges that both Deputy Morrison and Deputy Savell testified they saw that appellant's tail light was out from a quarter of a mile away. In addition, they both testified that they observed appellant's car traveling at a speed in excess of 90 miles per hour and weaving between lanes. Defense counsel cross-examined both deputies, but did not impeach this testimony. Appellant did not testify or call any witness who controverted the State's proof regarding the justification for the traffic stop. Therefore, appellant's jury-charge objection did not raise the type of factual dispute that article 38.23 contemplates. Because the evidence raised no issue of disputed fact about the detention and there was no evidence to controvert the deputies' testimony, the trial court did not err in refusing the charge. *See Rose v. State*, 470 S.W.2d 198, 200 (Tex.Crim.App.1971) (holding no jury issue was raised when no witness was called by defendant to controvert testimony of officers with respect to events and circumstances at time of arrest, and cross-examination did not raise fact issue on right to arrest); *Stoutner*, 36 S.W.3d at 721.

We overrule point of error one.

### *Alleged* Miranda *Violations*

In point of error two, appellant asserts the trial court erred in denying his motion to suppress appellant's oral statements and the results of his field sobriety test because Deputy Savell did not advise appellant of his rights until after Savell had questioned appellant and conducted the field sobriety test. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Wolfe v. State*, 917 S.W.2d 270 (Tex.Crim.App.1996).

■ We review a trial court's ruling on a motion to suppress for abuse of discretion. *Stoutner*, 36 S.W.3d at 721; *State v. Derrow*, 981 S.W.2d 776, 778 (Tex.App.-

---

4. Code of Criminal Procedure article 38.23 provides:

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp.2002).

Houston [1st Dist.] 1998, pet. ref'd). We afford nearly complete deference to the trial court's determinations of fact, while we review the evidence in the light most favorable to the trial court's ruling. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim. App.1997); *Stoutner*, 36 S.W.3d at 721.

In order to protect the federal constitutional privilege against testimonial self-incrimination, the United States Supreme Court mandated that certain warnings be given to suspects before "custodial interrogation." *Poulos v. State*, 799 S.W.2d 769, 771 (Tex.App.-Houston [1st Dist.] 1990, no pet.) (citing *Miranda*, 384 U.S. at 469, 86 S.Ct. at 1625).

The United States Supreme Court has held that a traffic stop does not constitute "custody" for *Miranda* purposes. *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984). Subsequent events may cause a noncustodial encounter to escalate into custodial interrogation. *Dowthitt v. State*, 931 S.W.2d 244, 254–55 (Tex.Crim.App. 1996); *Ussery v. State*, 651 S.W.2d 767, 770 (Tex.Crim.App.1983); *see Berkemer*, 468 U.S. at 440, 104 S.Ct. at 3150. In determining whether a noncustodial encounter has so escalated, a court may look to four factors: (1) probable cause to arrest; (2) the police officer's subjective intent; (3) the focus of the investigation; and (4) the defendant's subjective belief. *Dowthitt*, at 254–55; *Meek v. State*, 790 S.W.2d 618, 621–22 (Tex.Crim.App.1990). However, those factors are relevant only to the extent that they are manifested to the defendant through the words and actions of law enforcement officials; "the custody determination is based entirely upon objective circumstances." *Dowthitt*, at 254–55; *see Stansbury v. California*, 511 U.S. 318, 324–26, 114 S.Ct. 1526, 1530, 128 L.Ed.2d 293 (1994); *Berkemer*, 468 U.S. at 442, 104 S.Ct. at 3151–52.

In *Berkemer*, the defendant was stopped and asked to perform a field sobriety test. 468 U.S. at 423, 104 S.Ct. at 3141–42. After the defendant failed the sobriety test, the law enforcement officer asked the defendant whether he had been using intoxicants. *Id.* The officer never told the defendant that he was in custody until he was formally arrested. *Id.* The Supreme Court held that the defendant was not in custody for *Miranda* purposes until the formal arrest. *Id.* at 441–42, 104 S.Ct. at 3151–52.

Applying these authorities, the Court of Criminal Appeals has concluded a DWI investigation that includes questioning and a field sobriety test does not, without more, rise to the level of custodial interrogation. *State v. Stevenson*, 958 S.W.2d 824, 828–29 (Tex.Crim.App.1997) (citing *Berkemer*, 468 U.S. at 423, 104 S.Ct. at 3141–42). Specifically, the *Stevenson* court noted:

> There is no evidence in the record that Hilliard manifested to appellee any intent to arrest until appellee was formally arrested. The officer merely asked questions during a continuing investigation and administered sobriety tests. These acts are not sufficient to establish custody under *Miranda*.

958 S.W.2d at 829 n. 7.

In this case, the record shows Deputy Savell merely asked appellant whether he had been drinking and administered a field sobriety test. While the DWI investigation Deputy Savell performed may have shifted the focus of the encounter from a roadside stop to an investigative detention, it was no more intrusive than the fact situations in *Stevenson* or *Berkemer*; mere focus on appellant did not convert the investigation into an arrest. Therefore, the trial court did not abuse its discretion when it allowed Deputy Savell to testify

regarding appellant's statements and performance on the field sobriety test because there was no *Miranda* violation.[5]

We overrule point of error two.

### Right to Confront and Cross– Examine Witnesses

In point of error three, appellant complains the trial court violated his right to confront and cross-examine witnesses because he did not receive before trial the results of his breath test and the records for the particular intoxilyzer used for the breath test. U.S. CONST. amend. VI. Specifically, appellant argues that he properly filed (as did the State) a subpoena duces tecum to be served on Vicki Baker, the custodian of records for the intoxilyzer.[6] *See* TEX.CODE CRIM. PROC. ANN. arts. 24.01, .02, .03, .04 (Vernon 1989 & Supp.2002). Appellant also filed, but the trial court apparently did not rule on, a motion to compel compliance with the subpoena. Appellant did not receive the records until trial had already commenced and several of the State's witnesses had testified. In addition, two test slips from the intoxilyzer were apparently lost and, therefore, never produced. Appellant argues that because he attempted to obtain the records with a subpoena duces tecum and was, independently, entitled to the information under *Brady v. Maryland*, he was denied his

Sixth Amendment rights. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

■ A trial court violates a defendant's constitutional right of confrontation when it limits appropriate cross-examination. *Stevenson v. State*, 997 S.W.2d 766, 768 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd) (citing *Carroll v. State*, 916 S.W.2d 494, 497 (Tex.Crim.App.1996)). Appropriate cross-examination includes all avenues reasonably calculated to expose a motive, bias, or interest for the witness to testify. *Stevenson*, 997 S.W.2d at 768.

The trial court did not prevent appellant from questioning Ms. Baker. To the contrary, the record indicates appellant cross-examined her regarding the test results and the procedures used, both generally and with respect to him. Appellant did not object to the admission of the test results on the basis he had not received the results in a timely manner.[7] Therefore, the only issue is whether the purported delay in appellant receiving the records violated his Sixth Amendment rights. In making this determination, we look first to whether appellant was entitled to the records under *Brady* and then to whether he had a right to discover the records before trial.

### Was there a *Brady* violation?

■ Pursuant to *Brady*, the State has an affirmative duty to disclose evidence favorable and material to a defen-

---

5. Further, this Court has held that a defendant's performance during field sobriety tests is not testimonial in nature, but is physical evidence of the functioning of the defendant's mental and physical faculties. *Youens v. State*, 988 S.W.2d 404, 407 (Tex.App.-Houston [1st Dist.] 1999, no pet.) Accordingly, there is an additional basis for concluding the trial court did not abuse its discretion by admitting Deputy Savell's testimony concerning the manner in which appellant performed the tests. *See id.*

6. Appellant apparently sought to review materials and documents relating to the operation of the intoxilyzer over a period of time as well as the results of the test conducted on him. At trial, appellant attempted to show the intoxilyzer did not properly function and that there were test slips missing from the intoxilyzer records.

7. Appellant objected to the admission of the results on the grounds that the State did not establish the results were business records and because the State did not establish the test was properly administered.

dant's guilt or punishment under the Due Process Clause of the Fourteenth Amendment. *Thomas v. State*, 841 S.W.2d 399, 407 (Tex.Crim.App.1992); *Palmer v. State*, 902 S.W.2d 561, 562–63 (Tex.App.-Houston [1st Dist.] 1995, no pet.). The State has no duty to seek out exculpatory information independently on defendant's behalf. *Palmer*, 902 S.W.2d at 563. Once such information comes into its possession, however, the State's duty under *Brady* attaches, with or without a request from the defense for such evidence. *Thomas*, 841 S.W.2d at 407; *Palmer*, 902 S.W.2d at 563. A violation of that duty occurs when a prosecutor (1) fails to disclose evidence (2) which is favorable to the accused, and which (3) creates a probability sufficient to undermine confidence in the outcome of the proceeding. *Thomas*, 841 S.W.2d at 404; *Palmer*, 902 S.W.2d at 563. When unsure of whether to disclose the evidence, the prosecutor should submit the evidence to the trial court for his consideration. *Thomas*, 841 S.W.2d at 407; *Palmer*, 902 S.W.2d at 563. When exculpatory evidence is not withheld, but rather is disclosed during trial, courts have uniformly held that the inquiry is whether the defendant was prejudiced by the tardy disclosure. *Palmer*, 902 S.W.2d at 563. If the defendant received the material in time to put it to effective use at trial, his conviction should not be reversed simply because it was not disclosed as early as it might or should have been. *Id.* (citing *United States v. McKinney*, 758 F.2d 1036, 1050 (5th Cir.1985)); *accord Givens v. State*, 749 S.W.2d 954, 957 (Tex.App.-Fort Worth 1988, pet. ref'd).

 In this case, appellant argues the test results and intoxilyzer might have been favorable because they could have been used for impeachment.[8] However, appellant has not established that the disclosure came at a time when he was no longer able to put the material to effective use at trial and that the effect was to undermine confidence in the outcome of the proceeding. The State received the information at trial, as did appellant. Although appellant argues he never received two test slips from the intoxilyzer, they were apparently lost; neither party had the benefit of those two slips before or during trial.[9] The record indicates appellant cross-examined Ms. Baker with the intoxilyzer records and test results, including the absence of the two test slips. He does not argue the delay in receiving the records undermined confidence in the outcome of the proceeding. Therefore, appellant has not established a *Brady* violation.

## Was appellant entitled to discover the records before trial?

Appellant argues two Sixth Amendment provisions establish he was entitled to the intoxilyzer records before trial: the Confrontation Clause and the Compulsory Process Clause.

 The Confrontation Clause provides two rights to criminal defendants: the right physically to face those who testify against him and the right to conduct cross-examination. *Delaware v. Fensterer*, 474 U.S. 15, 18–19, 106 S.Ct. 292, 293–94,

---

**8.** Favorable evidence includes both exculpatory evidence, which tends to justify, excuse or clear the defendant from guilt, and impeachment evidence, which tends to dispute, disparage, deny, or contradict inculpatory evidence. *Thomas*, 841 S.W.2d at 404.

**9.** Even though appellant implies the alleged "loss" of the test slips was intentional, we note the records show the intoxilyzer records included several slips that showed invalid tests were conducted. There is no evidence in the record that indicates these test slips were of a different nature than the rest, which included both valid and invalid tests.

88 L.Ed.2d 15 (1985). The Confrontation Clause protects a defendant's trial rights and is inapplicable to proceedings occurring prior to trial. *Pennsylvania v. Ritchie,* 480 U.S. 39, 52, 107 S.Ct. 989, 998–99, 94 L.Ed.2d 40 (1987). When state-imposed restrictions on defense cross-examination of a witness prevents inquiry into areas that are otherwise proper, such as the witness' bias or motive, the court has intervened. *Id.* at 53–54, 107 S.Ct. at 998–1000; *see also Davis v. Alaska,* 415 U.S. at 308, 94 S.Ct. at 1105. However, the Court has expressly held that *Davis* did not create a right of pretrial discovery and has stated "[t]he ability to question adverse witnesses ... does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." *Ritchie,* 480 U.S. at 52–53, 107 S.Ct. at 998–99. Under these authorities, to the extent appellant sought pretrial production of documents, we conclude the Sixth Amendment did not entitle appellant to relief.

▬ Therefore, the remaining question is whether appellant was entitled to the information before trial because he filed a subpoena duces tecum under Code of Criminal Procedure article 24.02. The State argues the trial court did not err in refusing to compel compliance with appellant's subpoena because: (1) appellant did not file a pretrial motion to obtain the evidence; (2) appellant was not entitled to a "further" subpoena under article 24.02 once the State filed its own subpoena; (3) appellant did not secure a ruling on his motion to compel; and (4) appellant obtained the documents at trial.

Both the State and appellant (in that order) filed subpoenas duces tecum to obtain the intoxilyzer records. The subpoenas were requested and issued pursuant to chapter 24 of the Code of Criminal Proce-

dure. That chapter authorizes a defendant or the State to obtain a subpoena to secure the presence of witnesses whose testimony is material to its case. TEX. CODE CRIM. PROC. ANN. art. 24.01–.29 (Vernon 1989 & Supp.2002). Issuance of the subpoena is a matter of right on written, sworn application identifying the witness and that the testimony is material to the State or defense. TEX.CODE CRIM. PROC. ANN. art. 24.03 (Vernon 1989 & Supp.2002). Article 24.02 specifically authorizes the issuance of a subpoena duces tecum directing the witness to produce in court writings or other things in their possession. TEX.CODE CRIM. PROC. ANN. art. 24.02 (Vernon 1989). Even though appellant filed a subpoena and subpoena duces tecum to secure the presence at trial of the custodian of records for the intoxilyzer (Ms. Baker) and to require that she bring the records with her, appellant's subpoena did not request that Ms. Baker produce the records before trial. Once the original August 31, 2000 trial date was continued, appellant filed a motion to compel compliance with the subpoena duces tecum the next day. The motion to compel asked the trial court to require the records be produced at appellant's counsel's office immediately, not to compel the attendance of any witness or to secure documents at trial. The trial court did not rule on this motion. If the trial court had denied the motion, such a ruling would have been proper because chapter 24 was not the proper authority under which appellant should have sought production of the records.

▬ Criminal defendants do not have a general right to discover evidence in the State's possession, but they have been granted limited discovery. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14 (Vernon Supp.2002); *Washington v. State,* 856 S.W.2d 184, 187 (Tex.Crim.App.1993). Ar-

ticle 39.14 prescribes the exclusive manner by which a defendant may obtain pretrial discovery and provides that a trial court may order the State "before or during" the trial of a criminal action to produce certain evidentiary items more fully described in that article. TEX.CODE CRIM. PROC. art. 39.14 (Vernon 1989 & Supp.2002); *see Whitchurch v. State,* 650 S.W.2d 422, 425 (Tex.Crim.App.1983). The decision about what is discoverable is within the trial court's discretion. *See Whitchurch,* 650 S.W.2d at 425; *Quinones v. State,* 592 S.W.2d 933, 940 (Tex.Crim.App.1980). Appellant filed a motion for pretrial discovery under article 39.14, but the motion did not refer to the intoxilyzer records. He did not obtain a ruling on this motion. Although appellant filed a "motion for presentment" that asked the trial court to issue an order stating it had considered all pretrial motions, which the trial court granted, the trial court did not consider the issue of pretrial discovery of the intoxilyzer records to have been before it. In fact, the trial court stated on the record at the hearing on the motion to compel compliance with the subpoena duces tecum that, if a motion to discover the intoxilyzer records had been presented, the court would have granted the motion.

Instead, the record shows that, in the trial court, appellant relied on his subpoena duces tecum as the method for obtaining the intoxilyzer records. Because article 39.14 is the exclusive authority for appellant to obtain pretrial discovery of items in the State's possession, the fact that the trial court did not permit appellant to discover the information sought before trial via subpoena duces tecum under chapter 24 of the Code of Criminal Procedure was not error. Further, appellant received the information at trial and cross-examined the State's witness with it. Considering the authorities cited above and the facts of this case, we can-

not say appellant was denied his rights under the Sixth Amendment or that the trial court abused its discretion.

We overrule point of error three.

### Refusal to Suppress Intoxilyzer Results

In point of error four, appellant argues the trial court erred when it admitted the intoxilyzer test slips because the State did not lay the proper evidentiary foundation.

We review a trial court's evidentiary rulings under an abuse-of-discretion standard. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997); *Pierre v. State,* 2 S.W.3d 439, 442 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd). We recognize that a trial court must be given wide latitude to admit or exclude evidence. *Theus v. State,* 845 S.W.2d 874, 881 (Tex. Crim.App.1992); *Pierre,* 2 S.W.3d at 442. If the trial court's evidentiary ruling is within the zone of reasonable disagreement, we may not disturb its ruling. *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1990).

We note that intoxilyzer maintenance records are generally admissible as business records. TEX.R. EVID. 803; *Grady v. State,* 962 S.W.2d 128, 131 (Tex. App.-Houston [1st Dist.] 1997, no pet.). Moreover, intoxilyzer results are not hearsay, and a party may properly rely on information contained in the intoxilyzer printout in establishing the predicate for its admissibility into evidence. *Grady,* 962 S.W.2d at 131.

However, whether the results of tests performed by law enforcement officers to determine the concentration of alcohol in a person's system may be received in evidence at a criminal trial is controlled by a statute, which provides in pertinent part that "[a]nalysis of a specimen of the person's blood, breath, or urine ... taken at

the request or order of a peace officer is admissible." TEX. TRANSP. CODE ANN. § 724.064 (Vernon 1999). The breath specimen must be taken and analyzed under rules adopted by the Department of Public Safety (DPS). TEX. TRANSP. CODE ANN. § 724.016 (Vernon 1999). Rules adopted by the DPS to implement this statute provide:

> An operator shall remain in the presence of the subject for at least 15 minutes before the test and should exercise reasonable care to ensure the subject does not place any substances in the mouth. Direct observation is no longer necessary to ensure the validity or accuracy of the test result....

37 TEX. ADMIN. CODE § 19.3(c)(1) (West 2001).

 Appellant argues the evidence adduced at trial raised a fact issue regarding whether the person who tested appellant complied with this rule for two reasons: (1) there was not a 15–minute waiting period between the first and second tests administered to appellant and (2) during the period between tests, Deputy Savell had appellant wait on a bench outside the testing room. Relying on *Atkinson v. State*, appellant argues the results were therefore inadmissible. 923 S.W.2d 21, 23 (Tex. Crim.App.1996) (construing former TEX. REV.CIV. STAT. ANN. art. 6701*l*, § 3(a), (b), since repealed and recodified at TEX. TRANSP. CODE ANN. §§ 724.016, .064 (Vernon 1999)). It is undisputed that appellant was in Deputy Savell's presence not only for 15 minutes before the first test, but continuously until appellant's breath was successfully tested. Because appellant did not provide adequate samples, the test had to be repeated. Deputy Savell's testimony indicates he waited another 15 minutes before retesting appellant's breath; the time notations on the test results, however, indicate the second test began four minutes after the invalid test ended. Appellant's complaint is that Deputy Savell did not wait another 15 minutes before administering the second breath test and that, therefore, the results are not admissible. The State counters that the rule does not require an additional 15–minute waiting period in the event of a retest and that their expert testified no such additional waiting period was necessary.

We agree the rule does not require an additional 15–minute waiting period before a retest. Further, even though Deputy Savell had appellant wait outside the testing room in between tests, the rule does not require direct observation. The record indicates Deputy Savell continuously observed appellant before he administered the first test. Although he perhaps did not watch appellant every second during the period in between tests, the record illustrates appellant was under Deputy Savell's supervision. Further, the purpose of the rule—to prevent a test subject from putting something in his mouth—is not at issue here. Appellant did not argue in the trial court or on appeal that the test was invalid for that reason. Based on the rule's plain language and the evidence adduced at trial, the trial court did not abuse its discretion in admitting the breath test results.[10]

We overrule point of error four.

---

**10.** Further, contrary to appellant's assertion, *Atkinson* does not stand for the proposition that a test performed incorrectly is per se inadmissible. Instead, the *Atkinson* defendant requested that the jury be instructed it could disregard the test results if it found the person who administered the test did not comply with the DPS regulations. 923 S.W.2d at 23. The Court of Criminal Appeals held the trial court should have given the instruction and remanded the cause for the court of appeals to determine whether the defendant had been harmed by the lack of the instruction. *Id.* at 25–27. Here, appellant

### Denial of Motion for Continuance

In point of error five, appellant complains the trial court erred when it denied his second motion for continuance. In his motion, appellant sought a continuance because his expert witness was committed to appear in other courts on the day of his trial setting. Although appellant did present expert testimony at trial, he argues he should have been allowed to present his "chosen" expert instead of a "hastily secured" witness who did not have previous knowledge of the case.

In a first motion for continuance, the applicant must state:

1. The absent witness' name and, if known, the residence address (if the residence address is unknown, the motion must so state);
2. Diligence was used to procure the witness' attendance (not just that diligence was used in causing the subpoena to be issued);
3. The material facts expected to be proved by the witness;
4. Defendant did not wish or cause the witness to be absent;
5. The motion is not made for delay; and
6. The witness' attendance cannot be secured during the present term of court.

TEX.CODE CRIM. PROC. ANN. art. 29.06 (Vernon 1989); *Flores v. State*, 789 S.W.2d 694, 698 (Tex.App.-Houston [1st Dist.] 1990, no pet.).

The record indicates, however, appellant had already sought one continuance. Therefore, he was also required to comply with article 29.07, which specifically addresses subsequent motions for continuance by a defendant:

Subsequent motions for continuance on the part of the defendant shall, in addition to the requisites in the preceding Article, state also:

1. That the testimony cannot be procured from any other source known to the defendant; and
2. That the defendant has reasonable expectation of procuring the same at the next term of the court.

TEX.CODE CRIM. PROC. art. 29.07 (Vernon 1989).

Although appellant's second motion for continuance contained the required averments, the record indicates appellant presented at trial another expert who testified on the same issues he describes in his motion. The record does not show the testifying expert was not qualified or that he was ill-prepared. Further, appellant does not provide any authority for the proposition that a trial court abuses its discretion when it refuses to grant a continuance so the defendant may call the retained expert of his choice when another expert is available, we know of no such authority.

We overrule point of error five.

### Improper Commentary

In point of error six, appellant argues the trial court improperly punished appellant for asserting his right to a jury trial when the trial court made the following comments after he imposed sentence:

Yuriy, I just wish you would have stepped up here and said: Gosh, I made a mistake. I had a really high breath test driving like a fool, and showed some responsibility. And you just didn't. This is the second highest breath test we have tried here in a couple of years. They got you. The jury had absolutely no doubt of your intoxication in this matter. And that's it, fellows.

Appellant cites *Thomas v. United States*, 368 F.2d 941 (5th Cir.1966), as con-

did not seek an instruction that the jury could disregard the evidence.

trolling precedent. In that case, the trial court, immediately before sentencing the defendant, told him:

> If you will come clean and make a clean breast of this thing for once and for all, the Court will take that into account in the length of sentence to be imposed. If you persist, however, in your denial, as you did a moment ago, that you participated in this robbery, the Court must take that into account.

*Id.*, 368 F.2d at 944. After the defendant denied participation in the robbery, the court sentenced him to the maximum term permitted by law. *Id.* The Fifth Circuit held that the trial court committed error and reversed. That court reasoned:

> The two "ifs" which the district court presented to Thomas placed him in a terrible dilemma. If he chose the first "if," he would elect to forego all of the above-noted post-conviction remedies and to confess to the crime of perjury, however remote his prosecution for perjury might seem. Moreover, he would abandon the right guaranteed by the Fifth Amendment to choose not to be a witness against himself, not only as to the crime of which he had been convicted, but also as to the crime of perjury. His choice of the second "if" was made after the warning that the sentence to be imposed would be for a longer term than would be imposed if he confessed. From the record, it is clear that an ultimatum of a type which we cannot ignore or approve confronted Thomas. Truly, the district court put Thomas "between the devil and the deep blue sea."

.*Id.*, 368 F.2d at 945.

In *Vaughn v. State*, this Court analyzed *Thomas* and noted that even though the Fifth Circuit discussed Thomas' constitutional rights, that court expressly stated that its decision was *not* based on a denial of constitutional rights. 888 S.W.2d 62, 73–74 (Tex.App.-Houston [1st Dist.] 1994), *aff'd*, 931 S.W.2d 564 (Tex.Crim.App.1996). Instead, the Fifth Circuit premised its holding on the exercise of its supervisory power over federal district courts arising from the necessity to administer criminal justice in the federal courts. 888 S.W.2d at 73 (citing *Thomas*, 368 F.2d at 947). We also noted Fifth Circuit precedent is not binding on Texas courts, although constitutional pronouncements are in most cases highly persuasive. 888 S.W.2d at 73–74. This Court ultimately concluded that the *Thomas* holding, emanating from federal appellate supervisory control over trial courts, does not control the decisions of this Court. *Id.* at 74.

Appellant has cited no Texas authority, and we have found none, that supports his contention that the trial court's comments were error. Further, the trial court's comments were not made in front of a jury. Instead, the trial court made the statements after it assessed appellant's punishment. Appellant does not argue (and the record does not indicate) his sentence was excessive or otherwise inappropriate. He does not argue or point to any evidence in the record that indicates the trial court was biased or acted with improper motives. The statements made do not indicate the trial court gave defendant a harsher sentence because he chose to go to trial rather than plead; instead, they reflect the trial court's opinion regarding the evidence. Because there is no evidence the trial court punished appellant for exercising his constitutional rights, we overrule point of error six.

### Conclusion

We affirm the judgment.