

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ISAIAS PAREDES, | § | No. 08-18-00168-CR |
| Appellant, | § | Appeal from the |
| v. | § | County Criminal Court No. 3 |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20160C08674) |
| | § | |

**O P I N I O N**

Paredes was convicted by a jury of driving while intoxicated (DWI) with a blood-alcohol concentration (BAC) of 0.15 or more. He contends in two issues on appeal that the trial court erred by: (1) excluding maintenance records from the intoxilyzer instrument used to obtain his breath sample that showed the intoxilyzer was taken out of service over a year after his DWI offense; and (2) admitting his breath test results despite the intoxilyzer operator's failure to conduct a second 15-minute observation before a successful breath test but after a prior failed test produced an "INCOMPLETE TEST" message from the intoxilyzer. We hold that the intoxilyzer maintenance records from a year after the offense were irrelevant to whether the intoxilyzer was working on the date of the offense and that the testing results provided a proper basis for the trial

court to find that a second 15-minute observation period was unnecessary. Therefore, we affirm.

**BACKGROUND**

On September 22, 2016, Officers Senclair and Wilkinson conducted a traffic stop on Paredes for speeding. Despite the officers activating their patrol lights, Paredes drove past several open driveways instead of pulling over. He eventually drove into the parking lot of an apartment complex that the officers later learned was where he lived, and he began to quickly exit his car until the officers told him to remain inside. Paredes exhibited multiple signs of intoxication when speaking to the officers, and when the officers asked for his license and insurance, he told the officers he did not have either. Paredes had two unopened, 24-ounce cans of beer inside a convenience-store bag on the passenger seat of his car, and he told the officers that he drank only one 32-ounce beer. The officers conducted field sobriety tests on Paredes and arrested him based on his performance on those tests in combination with their other observations up to that point in time.

Upon his arrest, Paredes consented to a breath test, and Officer Wilkinson, a certified intoxilyzer operator, administered the testing at the police station. Paredes provided a total of three tests before the intoxilyzer registered two adequate breath samples required to complete a successful test. During the first two tests, the intoxilyzer gave two different automated messages reflecting incomplete tests. Although a technical supervisor for the intoxilyzer, Martha Mendoza, testified that the intoxilyzer was working properly on the date of Paredes' breath tests, Paredes attempted at trial to introduce maintenance records from the same intoxilyzer showing that on October 9, 2017, over a year after his DWI offense, the intoxilyzer was removed from service due to "erratic operational messages[.]" The trial court excluded the records on the basis that they

2

were not relevant to the time period at issue in the case.

Ultimately, the results of Paredes' third breath test were admitted at trial and showed a BAC of 0.232 for his first breath sample and 0.244 for his second sample. At the conclusion of the trial, a jury found Paredes guilty of DWI with a BAC of 0.15 or more.

## DISCUSSION

Paredes raises two issues in this appeal about evidentiary rulings by the trial court. In his first issue, he argues that the trial court erred in excluding maintenance records for the intoxilyzer "which show that the [i]ntoxilyzer machine was taken out of service after giving error messages similar to the message received in Appellant's case" and that, had he been able to present these facts, "the defense could have provided a reasonable doubt that Appellant's BAC was over the legal limit." In his second issue, he argues that the trial court erred in admitting his breath test results because they were unreliable under the third prong of the *Kelly/Daubert* standard where Officer Wilkinson failed to properly apply the technique for breath testing. Specifically, Paredes contends that the proper technique was not applied where Officer Wilkinson "failed to wait another fifteen minutes after Appellant gave an 'incomplete' sample[.]"

Regarding Paredes' first issue, the State responds that the trial court's exclusion of the intoxilyzer maintenance records was within the zone of reasonable disagreement because the records were not relevant and because, under a Rule 403 analysis, the records would have confused and misled the jury. And regarding Paredes' second issue, the State responds that it proved Officer Wilkinson conducted Paredes' breath test in accordance with the rules established by the Texas Department of Public Safety (the DPS) and therefore proved that the test was reliable. We hold that the trial court did not abuse its discretion in either of its evidentiary rulings which Paredes

3

challenged by this appeal.

### A. Standard of Review for Admissibility of Evidence

We review a trial court's ruling on the admissibility of evidence under an abuse of discretion standard. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). Under this standard, the trial court's ruling will be upheld as long as it was within the zone of reasonable disagreement. *Id*. If the ruling is correct under any applicable theory of law, it will not be disturbed even if the trial court gave the wrong reason for the right ruling. *Id*.

### B. Issue 1: Intoxilyzer Maintenance Records from Over a Year after Breath Test

#### 1. Underlying Facts

In a bill of review, Paredes submitted the maintenance records from the intoxilyzer used for his breath test as an exhibit. The exhibit showed the following:

1) On October 9, 2017, over a year after Paredes' offense, the intoxilyzer was removed from service due to "erratic operational messages[.]"

2) On October 19, 2017, the intoxilyzer was sent to the DPS lab for assessment and repair due to the "erratic unacceptable samples" it was producing.

3) After the DPS returned the intoxilyzer to the El Paso Police Department, the intoxilyzer appeared to be in proper working condition on November 21, 2017.

4) On November 28, 2017, the intoxilyzer displayed a message indicating a status failure, and the instrument was sent back to the DPS for assessment and repair.

Mendoza testified that her duties as technical supervisor included maintaining the El Paso Police Department's intoxilyzer instruments in working order, inspecting them once a month, making sure they were working properly, and keeping the records produced by the instruments. Mendoza was responsible for the maintenance and monitoring of the specific intoxilyzer used for

4

Paredes' breath tests. In the month leading up to Paredes' breath tests, Mendoza testified that only two maintenance-related actions were taken regarding the intoxilyzer: the wooden cabinet in which the intoxilyzer was stored had its door hinges replaced and a surge suppressor was plugged into the intoxilyzer as a precautionary measure to protect it from power outages. In the month after Paredes' tests, no repairs were needed. Mendoza further testified that the intoxilyzer was working properly during her inspections before and after the date of Paredes' breath tests, on September 14, 2016, and October 5, 2016, respectively. Based on her experience, training, and review of the maintenance records, Mendoza testified that the intoxilyzer was working properly on the date of Paredes' tests.

Furthermore, Mendoza testified that an intoxilyzer performs an operational system check at the outset of the testing procedure and multiple quality-control checks during the test. Officer Wilkinson testified that he simply turned on the intoxilyzer and observed it conduct these self-diagnostic checks.

Mendoza additionally testified that she was personally unaware of the intoxilyzer having any issues. When asked if she could definitively say whether or not it was having issues when Paredes took his breath tests, Mendoza testified, "I can say that when I had the instrument it wasn't getting an enormous amount of unacceptable samples." She explained that the technical supervisors saw unacceptable samples frequently and that they would start looking at the intoxilyzer more closely when they saw the unacceptable samples repeatedly occur. She agreed that the eventually-discovered issue with the intoxilyzer was something that may have become apparent only over time.

At trial, Paredes urged the trial court to admit the maintenance records and asserted that

5

the records showed the intoxilyzer had been "periodically giving these unacceptable samples" and thereby reflected the intoxilyzer was a "dud machine" at the time of Paredes' breath tests. However, the trial court ruled that the maintenance records were irrelevant and excluded them.

## 2. Applicable Law

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX. R. EVID. 401. Evidence which is not relevant is inadmissible. TEX. R. EVID. 402. It is important, when determining whether evidence is relevant, that courts examine the purpose for which the evidence is being introduced. *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009). "It is critical that there is a direct or logical connection between the actual evidence and the proposition sought to be proved." *Id.* The proponent of evidence bears the burden of showing its relevance. *Garza v. State*, 18 S.W.3d 813, 822 (Tex. App. – Fort Worth 2000, pet. ref'd); *see also In Matter of E.H.*, 512 S.W.3d 580, 584 (Tex. App. – El Paso 2017, no pet.).

If the proposed relevance for a proffered item of evidence is to show a particular condition on a specific date, failure to demonstrate some foundational connection between the evidence and condition sought to be proved – or reliance solely on speculation to supply the connection – will nullify the proposition and render the evidence irrelevant. *See McGhee v. State*, No. 01-09-00147-CR, 2011 WL 286119, at *5 (Tex. App. – Houston [1st Dist.] Jan. 27, 2011, pet. dism'd) (mem. op., not designated for publication) ("Whether the complainant used drugs over a month earlier would not rebut the toxicology report showing no drugs in her system at the time she was shot. Thus, we cannot say the trial court abused its discretion in finding the evidence irrelevant.");

6

*Wilson v. State*, No. 02-02-00085-CR, 2003 WL 151919, at \*3 (Tex. App. – Fort Worth Jan. 23, 2003, no pet.) (mem. op., not designated for publication) ("Because appellant's medical records, before and after his arrest, are not relevant to a determination of his condition at the time of his arrest, the trial court did not abuse its discretion in excluding them."); *cf. Fretwell v. State*, No. 05-00-01846-CR, 2002 WL 435932, at \*3-4 (Tex. App. – Dallas Mar. 21, 2002, no pet.) (not designated for publication) (holding that the trial court did not abuse its discretion in excluding purportedly impeaching photographs as irrelevant where their impeaching value was to show the condition of a van at the time of the defendant's arrest and where the only testimony regarding the photographs established that they were taken nearly two months after the relevant time of the arrest).

### 3. Application

In his briefing to this Court arguing as to why the trial court erred by ruling that the maintenance records were irrelevant, Paredes contends, "[w]hile the trial court appears to have believed the evidence was irrelevant because the machine wasn't taken out of service until a year after Appellant's tests, there is nothing in the record which shows that that fact matters." To support this contention, Paredes points to Mendoza's testimony that the issue leading to withdrawal of the intoxilyzer from use may have only become apparent over some period of time. However, Paredes' contention attempts to reverse the burden on who needs to show relevance. Essentially, he contends the burden was on the State to disprove relevance rather than on him to prove relevance, and following his logic, the State would have had to disprove that the intoxilyzer at issue might have had some hidden issue prior to being removed from use, despite the fact that the maintenance records lacked any indication of any such issues. We decline to endorse Paredes'

7

contention on this point because the burden was on him, as the proponent of the evidence, to show how maintenance records – produced a year in the future from his DWI offense – could have shown that the intoxilyzer was not working properly at the time of his arrest. *See Garza*, 18 S.W.3d at 822; *see also In Matter of E.H.*, 512 S.W.3d at 584. Additionally, endorsing such a contention would allow speculation, rather than actual evidentiary support, to supply the critical connection between the proffered evidence and the proposition sought to be proved by Paredes, as was required of him. *See Layton*, 280 S.W.3d at 240 (instructing that there must be a direct or logical connection between the actual evidence and the proposition sought to be proved by the proponent of the evidence).

In the State's brief, the State offers the following illustration to demonstrate why the maintenance records are irrelevant here: "Paredes' contention is like saying if your car was inspected 8 days before you took a trip and found to be working fine, and was inspected again 13 days after you got back and found to [be] working fine, and worked fine on the trip, but a year later you actually needed maintenance on the car, then at the time of your trip, the car must have needed a new motor." We find the State's illustration to be fitting of the situation that arose here.

Mendoza testified that her duties as technical supervisor for the El Paso Police Department's intoxilyzer instruments included maintaining them in working order, inspecting them once a month, and keeping the records for the intoxilyzers. Mendoza testified about the only two maintenance-related actions that were done for the intoxilyzer in the month prior to Paredes' breath tests – neither of which indicated that there was an issue with the intoxilyzer instrument itself as opposed to periphery components, if at all – and testified that no repairs were needed throughout the month following the tests. In addition, inspections eight days prior and 13 days

8

after the date of Paredes' breath tests, on September 14, 2016, and on October 5, 2016, respectively, revealed that the intoxilyzer was working properly on those two surrounding dates. Based on her experience, training, and review of the maintenance records, Mendoza testified that the intoxilyzer was working properly on the date of Paredes' breath tests. Furthermore, Officer Wilkinson added that he observed the intoxilyzer perform its automatic, self-diagnostic checks prior to conducting the breath tests. Based on this record, we hold that the intoxilyzer maintenance records reflecting operational issues with the intoxilyzer that arose subsequent to the defendant's breath tests were irrelevant to whether the intoxilyzer was working properly on the date of the tests where: (1) the operational issues began more than a full year after the date of the breath tests at issue; (2) inspections of the intoxilyzer a little over a week before and a week after the breath tests revealed that the intoxilyzer was working properly; (3) the technical supervisor for the intoxilyzer opined that the intoxilyzer was working properly on the date of the tests; and (4) the maintenance records for the intoxilyzer did not reflect any issues with the intoxilyzer in the intervening period of more than a year between the breath tests and the repair issues claimed to be relevant. *See McGhee*, 2011 WL 286119, at \*5; *Wilson*, 2003 WL 151919, at \*3; *cf. Fretwell*, 2002 WL 435932, at \*3-4. Thus, the trial court therefore did not abuse its discretion by excluding the intoxilyzer maintenance records as irrelevant. For this reason, we overrule Paredes' first issue presented for review, and we need not address the State's alternative arguments for upholding the trial court's ruling on this issue.

## C. Issue 2: Reliability of Breath Test Results

### 1. Underlying Facts

Officer Wilkinson testified that his primary duty as an intoxilyzer operator was to operate

the intoxilyzer in accordance with the appropriate rules, and two of these rules included making sure that the intoxilyzer was working properly prior to the test and maintaining constant observation of the breath-test subject for a minimum of 15 minutes prior to the test. The purpose of the 15-minute observation period was to make sure a breath-test subject did not burp, regurgitate, or put anything in their mouth that could leave residual alcohol before performing the test. Officer Wilkinson testified that he performed the 15-minute observation period and that Paredes did not do any of the things that the observation period was designed to detect. Officer Wilkinson testified that Paredes provided three breath tests before the intoxilyzer was able to finally produce test results. On the first test, the intoxilyzer gave the following message, "INCOMPLETE TEST: UNACCEPTABLE SAMPLE[.]" Officer Wilkinson explained that the intoxilyzer would normally show such a message if the subject failed to blow properly into the mouthpiece of the intoxilyzer and therefore failed to give enough air for the intoxilyzer to register an adequate breath sample. In that circumstance, the intoxilyzer would display the incomplete-test message and stop the test. On the second test, the intoxilyzer recorded two breath samples, with a BAC of 0.262 and 0.239, respectively, but gave the following message: "INCOMPLETE TEST: NO 0.020 AGREEMENT[.]" Officer Wilkinson explained that the intoxilyzer would display that message if the subject blew hard for the first sample but then blew a weak second sample. Because the intoxilyzer was designed to accept only samples ranging within plus or minus 0.020 BAC of each other, the intoxilyzer would register an unacceptable sample if the BAC of the two samples differed by greater than that allowable variance and stop the test. On Paredes' third test, he provided the two adequate samples required to complete a successful test. When Officer Wilkinson was asked on cross-examination about why he did not conduct an additional 15-minute

10

observation period after he received the "No 0.020 agreement" message from the intoxilyzer, Officer Wilkinson testified that he was not required to conduct additional observation periods beyond an initial 15-minute period so long as he did not observe a breath-test subject do any of the things that the observation period is designed to detect.

In a voir dire examination outside the jury's presence, Mendoza acknowledged that the "no 0.020 agreement" message could have indicated the presence of mouth alcohol. However, she clarified that such a message simply instructed the intoxilyzer operator that the two samples did not meet that particular requisite for a successful test and that the operator's direct observations alone would reveal if a breath-test subject had any alcohol in their mouth. Mendoza testified that the operator would not need to conduct an additional observation period if he did not observe any of the things that could potentially leave alcohol in a test subject's mouth.

Paredes raised a *Kelly*/*Daubert* challenge to the reliability of his breath test results based on Officer Wilkinson's failure to conduct an additional 15-minute observation period between the second and third tests. Paredes argued that the message given by the intoxilyzer after the second test demonstrated that there could have been residual alcohol in Paredes' mouth and that a second observation period was therefore required. The trial court ruled that the State proved the test results were reliable, overruled Paredes' objection, and admitted his breath test results.

### 2. Applicable Law

Scientific testimony must be both reliable and relevant in helping the jury reach a conclusion in a case. *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Under *Kelly*, scientific evidence must meet three criteria to be considered sufficiently reliable as to be of help to a jury: (1) the

11

underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question. *Kelly*, 824 S.W.2d at 573; *State v. Gonzalez*, No. 08-12-00311-CR, 2014 WL 5089175, at *5 (Tex. App. – El Paso Oct. 8, 2014, pet. ref'd) (not designated for publication). With respect to the scientific analysis of a breath specimen to determine alcohol concentration, the first two criteria are met because the Legislature has already determined that the underlying science is valid and the technique applying it is valid as long as it is administered by individuals certified by and using methods approved by the rules of the Texas Department of Public Safety. *Reynolds v. State*, 204 S.W.3d 386, 390 (Tex. Crim. App. 2006); *Gonzalez*, 2014 WL 5089175, at *5. The trial court is limited to determining the third criteria, namely, whether the technique was properly applied in accordance with the DPS rules on the occasion in question. *Reynolds*, 204 S.W.3d at 391; *Gonzalez*, 2014 WL 5089175, at *5; *see also* TEX. TRANSP. CODE ANN. §§ 724.001(7), 724.016(a) (providing that a breath specimen must be taken and analyzed under the rules adopted by the Department of Public Safety).

Establishing the sole rule implicated in this appeal, Texas Administrative Code section 19.3(a)(1) requires the following technique be performed before the administration of a breath test:

> An operator shall remain in the continuous presence of the subject at least 15 minutes immediately before the test and should exercise reasonable care to ensure that the subject does not place any substances in the mouth.

37 TEX. ADMIN. CODE § 19.3 (2015) (Tex. Dep't of Pub. Safety, Techniques and Methods).

Our sister Court in *Shpikula v. State* addressed a situation nearly identical to our own. *See Shpikula v. State*, 68 S.W.3d 212, 223 (Tex. App. – Houston [1st Dist.] 2002, pet. ref'd). In *Shpikula*, the defendant was in the intoxilyzer operator's presence for 15 minutes before a first

breath test, but the defendant "did not provide adequate samples" during the first test and a second test had to be performed to obtain his breath test results. *Id*. at 216, 223. The time notations on the test results indicated that the second test began only four minutes after the first invalid test ended. *Id*. at 223 Despite the defendant's contention on appeal—that the operator's failure to conduct an additional 15-minute observation period between the two breath tests rendered the results inadmissible—the Court held that "the rule does not require an additional 15–minute waiting period before a retest." *Id*. In so reasoning, the Court observed, "the purpose of the rule– to prevent a test subject from putting something in his mouth–is not at issue here" where the defendant did not argue in the trial court or on appeal that the test was invalid for that reason. *Id*.

### 3. Application

Here, Officer Wilkinson testified that he performed the 15-minute observation period prior to administration of the first breath test. Despite the message from the intoxilyzer during Paredes' second test that displayed, "INCOMPLETE TEST: NO 0.020 AGREEMENT[,]" Officer Wilkinson explained that such a message would show if a test subject blew hard for the first sample but weakly for the second sample. Although Mendoza testified that the message could have indicated the presence of alcohol, she clarified that an intoxilyzer operator's observations alone could dispel or confirm that. And dispositive to the issue here, Officer Wilkinson testified that he did not see Paredes do any of the things that the observation period was designed to detect. Thus, just as in *Shpikula*, "the purpose of the rule–to prevent a test subject from putting something in his mouth–is not at issue here" because there is no evidence showing that the incomplete-test message resulted from Paredes doing any of the things that the 15-minute observation period was designed to prevent. *See Shpikula*, 68 S.W.3d at 223; *see also State v. Moya*, 877 S.W.2d 504, 505-06 (Tex.

13

App. – San Antonio 1994, no pet.) (holding that an intoxilyzer operator does not need to repeat the 15-minute observation period after the intoxilyzer instrument produces an error message or otherwise needs to re-run its internal system check where the purpose of the observation period has nothing to do with the given error message or system check).

Therefore, we hold that the trial court did not abuse its discretion by admitting the breath test results where the State established that the results were reliable based on a proper application of the breath test in accordance with the DPS rules. *See Reynolds*, 204 S.W.3d at 391; *Gonzalez*, 2014 WL 5089175, at *5; *see also* TEX. TRANSP. CODE ANN. §§ 724.001(7), 724.016(a). Finding no error, we overrule Paredes' second issue presented for review.

## CONCLUSION

The trial court's judgment is affirmed. Additionally, we further note that the trial court certified Appellant's right to appeal in this case, but the certification does not bear Appellant's signature indicating that he was informed of his rights to appeal and to file a pro se petition for discretionary review with the Texas Court of Criminal Appeals. *See* TEX. R. APP. P. 25.2(d). The certification is therefore defective and has not been corrected by Appellant's attorney or the trial court. To remedy this defect, this Court ORDERS Appellant's attorney, pursuant to TEX. R. APP. P. 48.4, to send Appellant a copy of this opinion and this Court's judgment, to notify Appellant of his right to file a pro se petition for discretionary review, and to inform Appellant of the applicable deadlines. *See* TEX. R. APP. P. 48.4, 68. Appellant's attorney is further ORDERED to comply with all requirements of TEX. R. APP. P. 48.4.


GINA M. PALAFOX, Justice


14

March 31, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)