Opinion issued November 4, 2004











     



In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00072-CV




IN THE MATTER OF V.M.S., Appellant





On Appeal from the 313th District Court
Harris County, Texas
Trial Court Cause No. 2001-07186J




MEMORANDUM OPINION

          After we issued our original opinion in this case, appellant moved for
rehearing. We grant the motion for rehearing, withdraw our opinion, and judgment
of July 1, 2004, and substitute the following.
          A jury found that appellant, a juvenile, engaged in delinquent conduct by
committing capital murder. The jury further found that appellant used a deadly
weapon, namely, a firearm, during the commission of the delinquent conduct, and that
appellant was in need of rehabilitation. Based on the jury’s verdict, the trial court
committed appellant to the Texas Youth Commission, with a possible transfer to the
Texas Department of Criminal Justice, for a period of 39 years. Appellant appeals
three issues: (1) whether the trial court erred by denying appellant’s motion to compel
production of the “actual identities” of the witnesses against him; (2) whether the trial
court erred by limiting appellant’s time for voir dire and thus, appellant’s voir dire
questions; and (3) whether the trial court erred by admitting extraneous offense
evidence during disposition. We affirm.
BACKGROUND
          On August 25, 2001, appellant, age 13, got out of a car with two other juveniles
and approached four men walking in an apartment complex parking lot. Appellant
pointed a gun at the four men and demanded their money and valuables. The juveniles
forced the men to kneel while they robbed them, and, after robbing the men of their
possessions, appellant told the men to turn around and walk away. As the men were
walking away, appellant fired three shots. As a result, Sergio Ramirez, a/k/a Willie
Flores, died from a gunshot wound to the back, and another man was injured. 

 
DISCUSSION
Motion to Compel
          In his first issue presented, appellant asserts that the trial court violated his state



and federal


 constitutional rights to confront and cross-examine witnesses by denying
his motion to compel the production of the “actual identities” of the State’s three
eyewitnesses.



          During the hearing on his motion, appellant asserted that his investigator had
determined that the State’s witnesses were using false names and/or social security
numbers. Appellant requested that the trial court order the State to investigate whether
or not its eyewitnesses were using fictitious names or social security numbers and, if
true, to provide appellant with the true identification of the witnesses for appellant’s
own independent background check and due diligence. In response, the State
informed the trial court that, although the State had recently interviewed some of the
witnesses, the State did not possess any new information that differed from what the
witnesses originally told police. The trial court denied appellant’s motion. 
1.       Due Process
          The State has an affirmative duty to disclose evidence in its possession that is
favorable or material to a defendant’s guilt or punishment under the Due Process
Clause of the Fourteenth Amendment. Shpikula v. State, 68 S.W.3d 212, 219-20 (Tex.
App.—Houston [1st Dist.] 2002, pet. ref’d) (relying on Brady v. Maryland, 373
U.S.83, 86, 83 S. Ct. 1194, 1196-97(1963)). However, the State has no independent
duty to seek out exculpatory information on a defendant’s behalf. Shpikula, 68
S.W.3d at 219-20; see also Palmer v. State, 902 S.W.2d 561, 566 (Tex.
App.—Houston [1st Dist.], 1995 no pet.) (citing United States v. Bagley, 473 U.S.
667, 675, 105 S. Ct. 3375, 3379-80 (1985)). 
          In this case, the prosecutor indicated on the record that the State did not possess
any new information that differed from the witnesses’ original statements to police. 
Appellant does not argue that the State deprived him exculpatory independent
evidence in regard to witnesses that actually testified at trial. Moreover, nothing in the
record demonstrates that the State possessed any new evidence regarding the “true
identities” of the eyewitnesses, nor does appellant so contend. 
2.       Confrontation Clause
          The Confrontation Clause provides two rights to criminal defendants: the right
physically to face those who testify against them and the right to conduct
cross-examination. Delaware v. Fensterer, 474 U.S. 15, 18-19, 106 S. Ct. 292, 294
(1985); Shpikula, 68 S.W.3d at 220. The Confrontation Clause protects a defendant’s
trial rights and is inapplicable to proceedings occurring prior to trial. Pennsylvania
v. Ritchie, 480 U.S. 39, 52, 107 S. Ct. 989, 998-99 (1987); Shpikula, 68 S.W.3d at 221. 
There is no right to pretrial discovery and “[t]he ability to question adverse witnesses
. . . does not include the power to require the pretrial disclosure of any and all
information that might be useful in contradicting unfavorable testimony.” 
Pennsylvania, 480 U.S. at 52-53, 107 S. Ct. at 998-99; Shpikula, 68 S.W.3d at 221. 
Under these authorities, to the extent appellant sought pretrial production of the
“actual identities” of the State’s eyewitnesses, we conclude that the Sixth Amendment
did not entitle appellant to relief. See Shpikula, 68 S.W.3d at 221. 
          The record reflects that the trial court held two hearings outside the presence of
the jury: first, a hearing on appellant’s motion to compel discovery, and second, a
hearing on the State’s motion in limine to determine the admissibility of questions
concerning the eyewitnesses’ residency status. 
          In the motion to compel hearing, appellant only sought to obtain the real names
and identities of the eyewitnesses. The State indicated that it had the addresses of the
witnesses at the time of the hearing, which indicates that each of the eyewitness’s
whereabouts was known and available to both parties. Knowing their whereabouts 
made it possible for appellant to question each of the eyewitnesses directly about his
true identity. The record does not indicate any effort made by appellant to question
the eyewitnesses directly to secure the information appellant requested at the hearing. 
The court denied appellant’s motion to compel.
          During the hearing on the motion in limine, the trial court determined that: (1)
the witnesses were “wide open to question regarding any [prior] statement that they
have given,” particularly with regard to social security number or place of origin; and
(2) status of citizenship was a legitimate question, but parties were not allowed to
inquire whether a witness was in this country legally or illegally. 
          Subsequently, the State presented the eyewitness testimony of Jose Alberto
Mendoza (Mendoza), Guadalupe Cano Garza (Garza), and Luis John Carreon
(Carreon). Although appellant cross-examined each of them, he did not ask any of the
three eyewitnesses about false identities. Therefore, appellant had the opportunity to
question each eyewitness with respect to alleged identity fabrications, but did not do
so. We conclude that the trial court did not deny appellant his right to investigate the
identities of the State’s eyewitnesses or to challenge their testimony upon cross-examination. Thus, appellant’s rights to confront and cross-examine witnesses were
not denied. Accordingly, we overrule appellant’s first issue. 
Voir Dire Limitation 
          In his second issue presented, appellant contends that the trial court erred by 
imposing unreasonable time limits on voir dire and, thus, denying appellant the right
to proper voir dire questions. Specifically, appellant complains that the trial court
instructed appellant to “wrap it up” on two separate occasions during voir dire. On the
first occasion, the trial court warned, “124 minutes[,] this wraps it up.” The record
reveals that appellant continued voir dire questioning, without penalty, for 12 more
pages. Thereafter, the trial court again warned, “wrap it up.” After appellant
completed his voir dire examination, the following exchange transpired:
APPELLANT:If I may address the Court, Your Honor? Your
Honor, because the Court shortened my voir dire, I
would like to put on the – I would have discussed
experts, and the fact that there might be some. I
would have discussed guns, and get the jury’s
feelings on guns and victims of crimes. I would like
to have gone into that holding juveniles to higher or
lower standards and prisons for juveniles. Thank
you, Judge.
 
TRIAL COURT:Let the record reflect that the respondent received an
hour and twenty-five minutes on voir dire, and
Petitioner spent an hour and twenty-five minutes on
voir dire. Okay. 
 
          In Texas, trial courts have broad discretion over the jury selection process. 
Barajas v. State, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002); Caldwell v. State, 818
S.W.2d 790, 793 (Tex. Crim. App. 1991). The trial court does not err in restricting
voir dire unless it abuses its discretion. Barajas, 93 S.W.3d at 38. It is within the trial
court’s discretion to place reasonable time limits on voir dire and to prohibit improper
questions. Id. 
          The Court of Criminal Appeals has developed a test to determine whether a trial
court has erred in preventing a party from asking questions after the trial court’s time
limit has expired. See Ratliff v. State, 690 S.W.597, 599 (Tex. Crim. App. 1985). If,
as in this case, the defendant was not allowed to ask a question of the entire venire, the
reviewing court must decide (1) whether defense counsel attempted to prolong voir
dire by asking questions that were irrelevant, immaterial, or unnecessarily repetitious
and (2) whether the questions defense counsel was not allowed to ask were proper voir
dire questions.


 Id. 
          A voir dire question is proper if it seeks to discover a juror’s views on an issue
applicable to the case. Barajas, 93 S.W.3d at 38. An otherwise proper question is
impermissible, however, if it attempts to commit the juror to a particular verdict based
on particular facts. Id. Further, a voir dire question that is so vague or broad in nature
as to constitute a global fishing expedition is not proper and may be prevented by the
trial judge. Id at 39. 
          First, defense counsel reported to the trial court that he “would have discussed
experts, and the fact that there might be some.” Thus, defense counsel indicated a
topic he wanted to address, but did not state a specific question about experts. 
However, a topic is not the same as a proper question, and the form of a question may
be improper even if the topic is a legitimate and relevant area of inquiry. Howard v.
State, 941 S.W.2d 102, 110-11 (Tex. Crim. App. 1996). In this instance, there are
potentially proper and improper questions that could be asked within the topic of
experts. Caldwell, 818 S.W.2d at 794. Thus, we conclude that counsel did not present
a properly framed question to the trial court.
          Second, defense counsel reported to the trial court that he “would have
discussed guns, and get the jury’s feelings on guns and victims of crimes.” Once
again, this is not a specific question. It is not clear what defense counsel would have
asked, and thus, the trial court could not have known whether it was a proper question. 
See Caldwell, 818 S.W.2d at 794. Accordingly, the trial court did not abuse its
discretion by disallowing defense counsel’s inquiry. 
          Finally, defense counsel indicated to the trial court that he “would like to have
gone into that holding juveniles to higher or lower standards and prisons for
juveniles.” Again, this is not a specific question. It is not clear what defense counsel
would have asked, and thus, the trial court could not have known whether it was a
proper question. See id. We conclude that the “question” was improperly broad and,
accordingly, that the trial court did not abuse its discretion in disallowing it. See
Barajas, 93 S.W.3d at 41.


 
          Moreover, appellant admits that defense counsel was permitted in inquire into
the following areas: (1) juvenile crime and different standards of treatment from
adults; (2) differences in rehabilitating children and adults; and (3) range of
punishment (including probation). The record further reveals that the State made
inquires as to the issues of (1) different standards applied to juveniles, (2) prison for
juveniles, and (3) rehabilitation versus punishment for juveniles.
          Thus, in this case, appellant did not preserve his complaint about a shortened
voir dire for review on appeal. See Howard, 941 S.W.2d at 110. See also Barajas, 93
S.W.3d at 42 (“The trial court is within its discretion to prevent fishing expeditions
during voir dire that may extend jury selection ad infinitum.”). Because we conclude
that the topics cited by defense counsel were not proper voir dire questions, we need
not address whether defense counsel attempted to prolong voir dire. Accordingly, we
overrule appellant’s second issue. 
Extraneous Offense Evidence
          We review a trial court’s decision to admit or exclude evidence under an abuse-of-discretion standard. We will, thus, not reverse a trial court’s ruling unless that
ruling falls outside the zone of reasonable disagreement. Torres v. State, 71 S.W.3d
758, 760 (Tex. Crim. App. 2002); Roberts v. State, 29 S.W.3d 596, 600 (Tex.
App.—Houston [1st Dist.] 2000, pet. ref’d).
          In his third issue, appellant asserts that the trial court erred in admitting
extraneous offense evidence during disposition proceedings. Specifically, appellant
contends that the trial court erroneously determined that testimony from a defense
witness opened the door to cross-examination on extraneous offenses. 
          The record reveals that, during the disposition proceedings, appellant called
Deacon Dan Gilbert (Gilbert) to testify about his interactions with appellant in the
juvenile detention center wherein Gilbert provided pastoral counseling. Gilbert
testified that he had seen “genuine growth” in appellant since appellant first arrived
at the juvenile detention center. Gilbert testified that appellant’s behavior was “getting
better” and that appellant was “a much more mature youth with a better understanding
of his life, in general, today than he is [sic]. He was a very immature, anxious youth
from when I first met him.” 
          As an example of appellant’s growth, Gilbert related a recent incident wherein
a fight broke out between two youths at the detention center and appellant ran to notify
detention center employees. Gilbert testified that, “[I]n the past, [appellant] would
have been . . . rooting the fight on, or he would have even gotten involved. . .” 
Finally, Gilbert indicated that, “given the right conditions,” Gilbert expected
appellant’s growth to continue. 
          To preserve error for appellate review, the complaining party must make a
specific objection and obtain a ruling on the objection. Martinez v. State, 98 S.W.3d
189, 193 (Tex. Crim. App. 2003). A proper objection is one that is specific and
timely. Tex. R. App. P. 33.1; see id. With two exceptions, a party is required to
continue to object each time inadmissible evidence is offered. Id. (discussing
Etherington v. State, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991) (holding that one
objection was insufficient to preserve error for the following “three pages of questions
and answers on the subject”)). The two exceptions require counsel to either (1) obtain
a running objection, or (2) request a hearing outside the presence of the jury. Id. 
Finally, the point of error on appeal must comport with the objection made at trial. 
Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). 
          Before cross-examining Gilbert, the State argued that appellant had “opened the
door” with regard to appellant’s potential for growth and whether it was actually what
Gilbert believed it to be, or whether appellant had deceived him. The trial court
agreed. During the State’s cross-examination of Gilbert, the following exchange
transpired: 
STATE:[D]id you know [appellant] had an extensive criminal
involvement during the criminal history [sic]?
 
APPELLANT: Your Honor, I object to that. That totally violates
408(b) [sic] Notice.
 
TRIAL COURT: The objection is overruled. Answer the question.
 
APPELLANT:Ask for a continuing objection on this, a running
objection.
 
TRIAL COURT:My suggestion is that you make your objections so
it’s real clear exactly what you’re objecting to.
 
APPELLANT:Thank you, Your Honor.
 
TRIAL COURT:State your question again for the witness.
 
STATE:Did you know of [appellant’s] extensive criminology
[sic]?
 
WITNESS:I have no previous knowledge of [appellant’s]
previous criminal involvement.
 
STATE:Did you know that he first came into contact with the
criminal justice system back on March 1, 2001?
 
APPELLANT: Your Honor, objection. As to violates–
 
TRIAL COURT:State the objection.
 
APPELLANT:I’m going to object as it violates the prior 408(b) [sic]
Notice.
 
TRIAL COURT:It’s overruled.
 
          We construe appellant’s argument to refer to rule 404(b)’s notice requirement. 
Rule 404(b) requires that, upon timely request by a defendant in a criminal case,
reasonable notice be given in advance of trial of intent to introduce in the State’s case-in-chief evidence of other crimes, wrongs, or acts. Tex. R. Evid. 404(b). In this case,
however, appellant objected to evidence elicited upon cross-examination by the State
after the State presented its case-in-chief and rested. Thus, appellant’s rule 404(b)
objection is without merit. Accordingly, we overrule appellant’s third issue.
CONCLUSION
          We affirm the judgment of the trial court.
 
                                                             Sherry Radack
                                                             Chief Justice
 
Panel consists of Chief Justice Radack and Justices Alcala and Bland.
Do not publish. Tex. R. App. P. 47.(2)(b).