**Opinion issued July 12, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-00282-CR

———————————

## WILLIE DEWAYNE HUGHES, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

### On Appeal from the 248th District Court
### Harris County, Texas
### Trial Court Case No. 1213391

---

## MEMORANDUM OPINION

A jury convicted Willie Dewayne Hughes of the felony offense of aggravated assault against a public servant.[1] Hughes pleaded true to two

---

[1]     *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2), (b)(2)(B) (West 2011).

enhancement paragraphs, and the trial court assessed punishment at forty-five years' confinement. Hughes challenges his conviction, arguing that the trial court erred by (1) quashing his subpoena duces tecum and (2) instructing the jury that voluntary intoxication is not a defense. We affirm.

## Background

In April 2009, Hughes was exercising in and walking around a Houston-area park where several families were gathered. After several people noticed Hughes acting in a strange and unusual manner, they reported him as a suspicious person to the Houston Police Department. Officer C. Onwuka was the first HPD officer to arrive at the scene. Officer Onwuka observed Hughes walk towards the patrol vehicle with "clenched fist[s]." Hughes had advanced to within fifteen to twenty feet of Officer Onwuka's patrol vehicle when Officer Onwuka stepped out of the vehicle and gave Hughes an oral command to stop. Officer Onwuka informed Hughes why police had been called to the park. Hughes responded with a few "mumbled words," turned, and walked away from Officer Onwuka.

Officer Onwuka requested assistance from other HPD officers. Shortly thereafter, Officer D. Pham arrived at the scene. Hughes then began walking faster in the direction of a concession stand. Officers Onwuka and Pham approached the concession stand. Both Officers Onwuka and Pham noted that Hughes appeared to be intoxicated. Officer Onwuka gave an oral command for Hughes to get down on

the ground. Hughes complied after some period of time by slowly lowering himself to one knee and placing his hands toward his back. While Officer Pham remained at the concession stand entrance, Officer Onwuka attempted to place handcuffs on Hughes. Hughes stood up and punched Officer Onwuka.

Officer Pham entered the concession stand to assist Officer Onwuka. Although he was able to place handcuffs on Hughes's right wrist, Officer Pham was not successful in securing Hughes's left wrist. Hughes "swung [Officer Pham] around" and grabbed Officer Pham by his neck. Using a choke-hold, Hughes lifted Officer Pham from the ground. As Officer Pham struggled to breathe, Hughes grabbed a knife from the concession stand, pressed it against Officer Pham's chest, shouted obscenities, and threatened to kill Officer Pham. Officer Onwuka used his taser gun to stun Hughes. When the taser barbs lodged in his chest, Hughes released Officer Pham. Hughes then pulled the taser barbs from his chest, retrieved the knife, and attempted to exit the concession stand. By this time, however, other HPD officers had arrived at the scene. Collectively the officers were able to get Hughes under control using handcuffs and leg restraints.

A grand jury indicted Hughes for aggravated assault following the incident at the park. The indictment alleged that Hughes "intentionally and knowingly threaten[ed] with imminent bodily injury [D. Pham] . . . while [D. Pham] was lawfully discharging an official duty, by using and exhibiting a deadly weapon,

3

namely a knife, knowing that [D. Pham] was a public servant." At trial, Hughes presented an insanity defense, offering evidence of his mental illness, incompetence, and psychosis. After three days of trial and the testimony of ten witnesses, a jury convicted Hughes of aggravated assault. This appeal followed.

**Pretrial Discovery**

Hughes filed a pretrial application for a subpoena duces tecum requesting that the custodian of records for the HPD produce the following documents:

> All student materials used in or distributed to students and all lesson plans used in the following classes taught by the Houston Police Academy:
>
> 1.  Mental Health Officer Training Course on: 8/11/1998, 11/15/2007, 1/9/2008, 2/26/2008, 4/15/2008, 8/12/2008, 11/20/2008
>
> 2.  Recognizing/Handle Abnormal People Course on: 12/5/2009, 11/6/2009, 11/3/2009, 2/19/2010, 4/12/2010
>
> 3.  Mental Health Impairment (General) Course on: 5/8/2008, 7/21/2008, 4/6/2009, 7/9/2009, 08/11/2009, 10/21/2009, 11/3/2009, 04/13/2010
>
> 4.  Crisis Intervention Training Course on 9/7/2007.
>
> . . .
>
> In this subpoena, material used in or distributed to students includes, but is not limited to, paper documents such as course outlines or texts, study materials, videotapes, slide shows such as Power Point and all other materials provided to or shown to students.

4

On HPD's motion arguing that Hughes's discovery request was overbroad, vague, and not supported by the requisite showings of materiality and relevance, the trial court quashed the subpoena, noting by hand on its quashal order that the subpoena was "broad." In his first issue, Hughes argues that the trial court's quashal order constitutes error because evidence of Officers Onwuka's and Pham's training in the handling of mentally ill persons was material and relevant to his defense. According to Hughes, the exclusion of this evidence from the jury's consideration rises to the level of an unconstitutional deprivation of due process and his right to present a defense.

## I. Standard of Review

We review the trial court's rulings on motions for pretrial discovery for an abuse of discretion. *See McBride v. State*, 838 S.W.2d 248, 250 (Tex. Crim. App. 1992); *Shpikula v. State*, 68 S.W.3d 212, 222 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). Likewise, decisions regarding pretrial discovery of evidence that is not exculpatory, mitigating, or privileged are within the discretion of the trial court. *Kinnamon v. State*, 791 S.W.2d 84, 91 (Tex. Crim. App. 1990), *overruled on other grounds*, *Cook v. State*, 884 S.W.2d 485 (Tex. Crim. App. 1994).

## II. Subpoena Duces Tecum

A defendant in a criminal case does not have a general right to discovery of evidence in possession of the State, but he has been granted limited discovery by

the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14 (West Supp. 2011); *Kinnamon*, 791 S.W.2d at 91. Article 24.02 of the Code authorizes the issuance of a subpoena duces tecum to direct a particular witness to produce in court writings or other things in his possession. *See* TEX. CODE CRIM. PROC. ANN. art. 24.02 (West 2011). Article 24.02, however, does not require the "pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." *Welch v. State*, No. 06-10-00020-CR, 2011 WL 1364970, at *7 (Tex. App.—Texarkana Apr. 12, 2011, pet. ref'd) (mem. op., not designated for publication) (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 52−53, 107 S. Ct. 989 (1987), discussing a party's Confrontation Clause rights). Rather, as our sister court of appeals has described it, "a subpoena duces tecum is not to be used as a discovery weapon, but as an aid to discovery based upon a showing of materiality and relevance." *Cruz v. State*, 838 S.W.2d 682, 686 (Tex. App.—Houston [14th Dist.] 1992, writ ref'd).

Here, Hughes's application for a subpoena duces tecum requested documentation of training occurring at the Houston Police Academy over the course of a twelve year period, with dates ranging from more than ten years before his assault on Officer Pham to nearly one year after.[2] The subpoena did not tie the

---

[2] We note that, although Hughes filed two amended applications for subpoenas duces tecum, he did not narrow the scope of the discovery requested in either subpoena. It was not until the day trial commenced—five months after the trial

6

information requested to any particular officer's training or explain the materiality and relevance of the items requested. In its motion to quash, HPD objected that, "with the exception of Crisis Intervention Training, the class titles listed in [Hughes's] subpoena are not necessarily the titles of courses offered at the Houston Police Academy," and explained that, because "the list that [Hughes] set[] forth is actually broad titles used by [the Texas Commission on Law Enforcement Officer Standards and Education] to categorize courses attended by law enforcement officers nationwide," compliance with the subpoena would require HPD to "reverse engineer [Hughes's] subpoena to determine 1) the courses that correspond with [Hughes's] request and 2) whether the course was one offered by the Houston Police Academy." Hughes did not file a response to HPD's motion, and as the trial court noted by hand on in its order quashing the subpoena, his counsel did not timely appear at the hearing on the motion to quash. On this record, the trial court could reasonably conclude that the information requested by Hughes in the subpoena was overbroad. We hold that the trial court's quashal order does not constitute error, and we overrule Hughes's first issue.[3]

court issued its quashal order—that Hughes made his offer of proof regarding the materiality and relevancy of the items requested in his subpoena. At the time he filed his offer of proof, Hughes did not narrow the scope of the subpoena or re-urge his request for production of the documents listed therein.

[3] In the statement of his first issue, Hughes also complains that the trial court erred by quashing "the proper inquiry of the training records of the testifying Houston

## Jury Charge

Over Hughes's objection, the trial court included a voluntary-intoxication instruction in its charge, which stated:

> Voluntary intoxication does not constitute a defense to the commission of a crime. "Intoxication" means [a] disturbance of mental or physical capacity resulting from the introduction of any substance into the body.

Hughes argues in his second issue that this instruction was not warranted because "[t]his case was never about whether [his] intoxication vitiated his culpable mental state. Instead, this case was about whether his severe limited intellectual capabilities combined with his psychosis rendered him insane under the law at the time of the offense."

---

Police Officers." To the extent that this complaint regards the trial court's refusal to permit cross-examination of HPD officers about their training in dealing with mentally ill persons during the guilt phase of trial, we also conclude that the trial court did not err. The record establishes that the trial court did not foreclose cross-examination on the officers' training entirely; instead, the trial court merely delayed its presentation. At the time Hughes attempted to elicit testimony regarding the officers' training, no evidence of his mental competency had been adduced. The trial court determined that until such time as there was evidence that Hughes was mentally ill, testimony about how HPD officers are trained to interact with mentally ill persons was irrelevant. The trial court, however, expressed its willingness to permit testimony on officer training after Hughes presented mental competency evidence, and the trial court ordered the State to secure the officers' availability to be recalled as witnesses. That Hughes failed to request that any officer be recalled to testify after Hughes's expert offered an opinion regarding his mental illness and competency does not support the reversal of his conviction on appeal.

## I.    Standard of Review

To determine whether the trial court's charge contains reversible error, we first decide whether error exists, and if error exists, we determine whether the error harmed the defendant. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003); *Jacobs v. State*, 355 S.W.3d 99, 101 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd). Hughes objected to the voluntary-intoxication instruction, and thus, if the charge was erroneous, reversal is required if the error is calculated to injure his rights, meaning that "there must be *some* harm" to Hughes from the error. *Sakil v. State*, 287 S.W.3d 23, 25-26 (Tex. Crim. App. 2009) (quoting *Almanza v. State*, 686 S.W.2d 157, 161 (Tex. Crim. App. 1984) (op. on reh'g), *superseded on other grounds by rule as stated in Rodriguez v. State*, 758 S.W.2d 787, 788 (Tex. Crim. App. 1988)).

## II.    Voluntary-Intoxication Instruction

The trial court's charge must fully instruct the jury on the law applicable to the case and apply that law to the facts adduced at trial. *Gray v. State*, 152 S.W.3d 125, 127 (Tex. Crim. App. 2004); *see* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). "The function of a jury charge is not 'merely to avoid misleading or confusing the jury,' but 'to lead and to prevent confusion.'" *Sakil*, 287 S.W.3d at 26 (quoting *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996)). A voluntary-intoxication instruction operates to inform the jury that the elements of

9

the offense, including the requisite mental state, are not affected by evidence of intoxication, making the instruction "appropriate if there is evidence from any source that might lead a jury to conclude that the defendant's intoxication somehow excused his actions." *Sakil*, 287 S.W.3d at 26; *see also* TEX. PENAL CODE ANN. § 8.04(a) (West 2011) ("Voluntary intoxication does not constitute a defense to the commission of crime.").

More than one witness testified in this case about Hughes's possible intoxication. The police officers who responded to the suspicious-person call testified that Hughes exhibited signs of intoxication. Officer Onwuka stated that, when he first confronted Hughes, he suspected Hughes might be intoxicated because his eyes were bloodshot, his speech appeared to be slurred, and he was not following verbal commands. Officer Onwuka further testified that these circumstances were "usually signs of chemical intox." Officer Pham also expressed his opinion that Hughes was intoxicated. According to Officer Pham, Hughes used his hand to balance himself and had bloodshot eyes. Another officer who helped place Hughes in the patrol vehicle after his arrest testified that Hughes was "agitated," "screaming," and "shouting a lot of obscenities." That officer observed that Hughes's "pupils were slightly bloodshot, dilated." He explained that Hughes's removal of his shirt was another indication that he might have been under the influence of drugs—particularly PCP, as "a lot of people on PCP will

10

overheat." Additionally, a thirteen-year-old boy who was at the park with his family when Hughes assaulted Officer Pham, witnessed Hughes drink a beer. The boy described Hughes as having "red eyes" and an appearance of being "drunk or high." Both the State and Hughes acknowledged the evidence of intoxication in their opening and closing arguments. Hughes, however, urged the jury to disregard the intoxication evidence and give weight instead to the evidence showing he was insane at the time of the assault.

That Hughes did not rely on the evidence of possible intoxication to excuse his assault on Officer Pham does not control the trial court's submission of a voluntary-intoxication instruction. *See Taylor v. State*, 885 S.W.2d 154, 158 (Tex. Crim. App. 1994) (rejecting argument that defendant must rely on intoxication in effort to excuse her actions before voluntary-intoxication instruction is warranted). Although the testimony of the lay witness and the various police officers does not establish unequivocally that Hughes was intoxicated on the day of the assault, the testimony is sufficient to make intoxication an issue in the case. Based on the testimony presented, the trial court could reasonably conclude that a juror might find that intoxication somehow excused Hughes's actions. Thus, by instructing the jury that voluntary intoxication does not constitute a defense to the offense charged—an intentional and knowing assault on Officer Pham with a deadly weapon while Officer Pham was discharging an official duty—the trial court used

the charge to prevent confusion. *See Sakil*, 287 S.W.3d at 28. We conclude that inclusion of the voluntary-intoxication instruction did not constitute error, and we overrule Hughes's second issue.

## Conclusion

Having overruled both of Hughes's issues on appeal, we affirm the trial court's judgment.

Harvey Brown
Justice

Panel consists of Justices Bland, Massengale, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).