

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| IN RE: | § | |
| | | No. 08-19-00296-CR |
| EL PASO COUNTY PUBLIC | § | |
| DEFENDER, | § | AN ORIGINAL PROCEEDING |
| | § | |
| Relator. | | IN MANDAMUS |
| | § | |

## O P I N I O N

Challenging a discovery order, Relator Sarah Hernandez[1] filed a petition for a writ of mandamus against the Honorable Alyssa Perez, Judge of the 210th District Court of El Paso County, Texas. But the mandamus as originally filed has been derailed by two significant post-filing events. First, the challenged order was amended by the trial court to delete the most objectionable part--a global requirement that the defendant seek pre-approval from the trial court before issuing any subpoenas. What remained after the amended order was a more routine materiality/relevance question geared toward a particular set of documents germane to a specific witness. Specifically, Hernandez sought to subpoena from the City of El Paso, police academy

---

[1] Although this petition was styled *In re El Paso County Public Defender*, the Public Defender's Office is not the relator in this matter, but rather is counsel for Hernandez, who is the true relator, as she is the party ultimately seeking relief from the trial court's order. See TEX.R.APP.P. 3.1(f) ("*Relator* means a person seeking relief in an original proceeding in an appellate court other than by habeas corpus in a criminal case.").

1

lesson plans in a case where the State will present an expert traffic accident reconstructionist--the sought-after lesson plans were used to train that expert. That question in large measure turns on whether the lesson plans are "material" to the defense, and during the pendency of this mandamus proceeding the Texas Court of Criminal Appeals issued an opinion clarifying, if not significantly changing, our understanding of what is "material.

We ultimately conclude that Relator has not met the mandamus standard in her challenge to the remaining portion of the trial court's order. We are hamstrung by the absence of the lesson plans in our record, as well as the hearing transcript that would explain the proffered expert's methodology. Accordingly, we deny the mandamus, but do so without violence to any argument that Hernandez, if she so chooses, might advance under the new standard for materiality.

## I. BACKGROUND

Hernandez was indicted on two counts of racing on a highway causing serious bodily injury. The State designated El Paso Sheriff's Deputy Special Traffic Investigator Jose Melero as an expert witness in accident-reconstruction. The State disclosed in its notice of prospective witnesses that the law-enforcement officers:

> [W]ill testify as to any facts known to them in the case and, to the extent qualified, will testify as experts within their respective fields of knowledge and expertise. This includes expert testimony on accident reconstruction, crash scene analysis, vehicle speed analysis (including 90 degree momentum calculation), general law enforcement procedures and practices, and any other area in which they have specialized knowledge or expertise.

The trial court set a *Daubert*[2] hearing for October 22, 2019. Five days prior to the hearing, Hernandez filed with the district clerk an application for a subpoena duces tecum which directed

---

[2] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). The record uses the case name as a short-hand reference for a hearing to challenge the credentials or methodology of an expert witness. In Texas criminal practice, challenges to an expert's reliability are governed by standard set out in *Kelly v. State*, 824 S.W.2d 568, 572 (Tex.Crim.App. 1992).

the records custodian for the El Paso Police Department Academy to appear and produce the lesson plans for Course No. 2070 (Accident Investigations) and Course No. 2071 (Accident Reconstruction) for the year 2015. Those two specific courses are listed on Officer Melero's Texas Commission on Law Enforcement ("TCOLE") Personal Status Report for course work that he completed.[3] The subpoena application asserted that the records custodian was "believed to have material testimony or evidence to the defense in this action."

The City of El Paso moved to quash the subpoena and requested a protective order. After learning of the subpoena, the State filed its own motion to quash and request for protective order.[4] The State objected generally that the subpoena sought information that was privileged and irrelevant, and that the subpoena was unduly burdensome, harassing, overbroad, and amounted to an improper fishing expedition. Specifically, the State argued in part that Hernandez was attempting to circumvent Article 39.14 of the Texas Code of Criminal Procedure and that Article 24.03 did not authorize issuance of the subpoena because "the defense has not shown how the information is *material or favorable* to its case so as to be entitled to the issuance of a subpoena in the first place." [Emphasis added]. The State's motion also sought a protective order governing future discovery because it believed Hernandez had engaged in "abuse of process" when utilizing

---

[3] Officer Melero completed 200 hundred hours of training in the two courses that are only described as "Accident Investigations" on the TCOLE report, which notes that some hours were taught by the El Paso County Sheriff's Office, and some by the El Paso Police Academy.

[4] The subpoena duces tecum was served on the EPPD custodian on October 18, 2019 (a Friday). The executed return was filed with the district clerk on the day of the *Daubert* hearing. The State argued below in support of the motion to quash and protective order that counsel for Hernandez had not provided the State with notice of the subpoena because he did not serve the prosecutor with a copy of the defendant's application for subpoena duces tecum. Article 24.03 of the Texas Code of Criminal Procedure itself does not expressly require the party issuing the subpoena to serve the opposing party with a copy of the subpoena. *See* TEX.CODE CRIM.PROC.ANN. art. 24.03 (requiring the application "be filed with the clerk" who is responsible for "[placing it] with the papers in the cause or, if the application is filed electronically, placed with any other electronic information linked to the number of the cause[]" and [making] the application "available to both the State and the defendant."). However, even if counsel for Relator did not violate the rules of procedure, the last-minute service of the subpoena and lack of a courtesy copy shared among all counsel may have driven the unusually contentious nature of the proceedings below.

her subpoena power that evinced "a clear preference for 'trial by ambush.'" The City's motion to quash argued that Relator had failed to comply with Article 24.02 which governs issuance of subpoenas. The City urged that "[w]hile § 24.02 does authorize the issuance of the subpoena duces tecum, [Hernandez] is still required to show *materiality and good cause*," before it could issue. [Emphasis added].

Officer Melero testified at the *Daubert* hearing, but that hearing transcript is not part of our record. Two days after the *Daubert* hearing, the trial court heard the motions to quash. Our record does contain the transcript of that October 24, 2019 hearing. At that hearing, the City had available approximately 600 pages of materials in the form of "textbooks" that were responsive to the subpoena requests. But the City objected to releasing the materials without any adequate basis being articulated by Hernandez. Rather, the City argued that the records were being sought merely as a means for defense counsel to prepare for cross-examination of the officer at trial, which it claims is not a purpose authorized by Article 39.14 of the Texas Code of Criminal Procedure. Counsel for the City suggested that the trial court could review the records in camera if necessary, to make a materiality determination.

At the hearing, the State adopted the arguments advanced by the City Attorney. It also argued that a defendant carries the burden to show the items that they are seeking are both material and favorable. Quoting the State's attorney: "But the cases make it plain that the burden is on the Defense to show materiality and favorableness." The State's attorney urged that "materiality" is defined "as something that would change the outcome of the case in their favor[.]" And the State's attorney argued that Hernandez could not meet that standard. Another thread of the State's argument below was that Hernandez should have pursued a motion to compel against the State, as opposed to subpoenaing a third party to produce a document she thinks the State should have

4

turned over.

In response, Hernandez's counsel argued that the subpoena was authorized by her Sixth Amendment right to compulsory process and effective assistance of counsel, which Article 39.14 could not restrict. Counsel asserted that Officer Merelo intended to testify to a skid mark analysis and the course material would be material and relevant to that topic:

> The purpose of the *Daubert* hearing was to decide whether or not he was going to testify as an expert. Whether or not his testimony is admissible at trial and how much weight the jury should give it requires that we be -- that we have some sort of basis to cross-examine him on the methods and the methodologies which he uses to arrive at his conclusions.
>
> What we learned from the *Daubert* hearing is that he is going to be testifying solely as an expert with regard to skid mark analysis.
>
> [. . .]
>
> I'm not sure what there may be in there with respect to skid mark analysis, but it certainly is relevant. It's been put into issue by the State[**.**]
>
> [. . .]
>
> I'm entitled to review the materials which the expert relies on for his expertise, and they do not have to be admissible.

Hernandez's counsel also invited the trial court to review the material in camera.

At the end of the hearing, the trial court made an oral finding that there was a lack of sufficient showing of materiality, favorability, or good cause and orally granted the motions to quash. There is no indication from the reporter's record of the hearing that the trial court ever actually viewed the documents in making its ruling.

On October 30, 2019, the trial court signed a written order that quashed the subpoena and granted the State and City's respective protective orders. The written order expressly imposed the following conditions:

> [T]he motion for protective order filed by the State should be, and the same is hereby, GRANTED, and that the Defendant shall be, and she is hereby,

5

PROHIBITED from issuing and serving subpoenas or subpoenas duces tecum in this case for pre-trial hearings or otherwise without first filing an application for subpoena with the Court, with notice to the State, showing how the testimony and evidence would be material and favorable to the Defendant, and obtaining an order authorizing the issuance of the subpoena.

## II. MANDAMUS PROCEEDINGS

On November 27, 2019, Hernandez filed her petition for a writ of mandamus. She identified four issues. The first issue globally complains that the order was an abuse of discretion. The next three issues focused on the "pre-clearance" feature of the trial court's order that required Hernandez to first come to the trial court before filing an application for a subpoena and demonstrate that the items sought are material and favorable. We stayed the proceedings below pending resolution of this appeal, but we later lifted the stay to allow the State to file a motion in the trial court to vacate the portion of the trial court's protective order imposing the subpoena preclearance requirement on Hernandez. Thereafter, the State filed the motion to vacate in the trial court which then issued an amended order removing the subpoena preclearance requirement.

### A. The Remaining Protective Order

After the trial court amended the order to remove the preclearance requirement, the remaining portion of the order quashed the challenged subpoena and contained two sentences that "granted" the City's Protective Order and "granted" the State's Protective Order. An order, however, should do just that--it should command a party to perform or desist from performing a specific act. When an order only "grants" a motion--as the order does here--the reader is required to go back to the original motion to discern what the movant was requesting, either in the body of the motion or the prayer for relief. Sometimes the relief sought by a motion is clear, but sometimes not.

Here, the City's motion asked that "the subpoena be quashed insofar as it requests records

6

that the Defendant is not entitled to discover or is not entitled to subpoena directly from the Police Department[.]"[5]

The State's motion sought protection from releasing "information that is law enforcement privileged or confidential by law . . .[and] any records that would cause violations of the law or the privacy rights of any other individual." The motion also sought "protection of this Court from further repeated subpoenas for any other information and records linked or identifiable to this officer." [6] Given the impreciseness of an order that only grants a motion (without stating what is specifically ordered), the most we can say is that Relator is likely prohibited from issuing a subpoena to the City of El Paso for records linked to Officer Melero.

## B. Relator's Claim

Focused only on that issue, Hernandez urges that issuance of a subpoena (and subpoena duces tecum) is a matter of right so long as the testimony or item sought is material to the defense's case. And she argues the lesson plans are relevant given that the State intends to call Officer Melero at trial "who, presumably, will testify that Ms. Hernandez was exceeding the speed limit" based on "certain esoteric calculations known only to him." Within the petition for mandamus, Hernandez claims a right to the lesson plans pursuant to several theories, including (1) her due process rights under *Brady*; (2) her right to compulsory process; (3) her Sixth Amendment right to effective assistance of counsel; (4) the Code of Criminal Procedure's subpoena issuance

---

[5] The motion also asked for alternative relief in the event that the subpoena was not quashed, specifically that the City be given time to "adequately prepare the records," a request that the Defendant pay for the costs of copies, and an "in camera review of the records to insure that no confidential, privileged or non-material records" be included. Because the trial court did in fact quash the subpoena in its entirety, these conditional requests for relief were not triggered and are not before us.

[6] Beyond that, the motion asked the court to award sanctions pursuant to TEX.CODE CRIM.PROC.Ann. art. 1.052 and conditionally, if the court were to allow the subpoena, the State asked for indemnity and the posting of a surety bond to protect "individuals affected by the subpoenas[.]" As no sanctions were awarded, and the later relief is conditional upon an event that did not occur, these provisions are not before us.

provisions, TEX.CODE CRIM.PROC.ANN. arts. 24.02-.03; and (5) the Michael Morton Act, TEX.CODE CRIM.PROC.ANN. art. 39.14(h). With respect to the Article 39.14 grounds, she asserts that materiality is not a prerequisite.

The mandamus petition also argues (though not separately signposted as a distinct issue) that the failure of the trial court to conduct an in camera review denies Hernandez the ability to a remedy by appeal. Because the lesson plans are not in the record, Hernandez lacks any ability to show harm from her inability to use them at trial.

### C. Standard of Review

To be entitled to mandamus relief, a relator must show: (1) that they have no adequate remedy at law; and (2) that what the relator seeks to compel is a ministerial act. *In re State ex rel. Weeks*, 391 S.W.3d 117, 122 (Tex.Crim.App. 2013). The "no adequate remedy at law" requirement contemplates that while a party may technically possess some remedy, it "may nevertheless be so uncertain, tedious, burdensome, slow, inconvenient, inappropriate, or ineffective as to be deemed inadequate." *Id*. The ministerial act requirement is satisfied if the relator can show a clear right to the relief sought. *Id*. A clear right to relief is shown when the facts and circumstances dictate but one rational decision "under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles." *Id*.

Stated otherwise, the relator must show that "the governing law is of such absolute clarity and certainty that nothing is left to the court's discretion." *Powell v. Hocker*, 516 S.W.3d 488, 495 (Tex.Crim.App. 2017). Here, we apply these standards in light of the law governing the avenues of criminal discovery.

**D. Discovery in Criminal Cases**

Relevant here, an accused has three avenues for gathering evidence to defend against the State's prosecution of criminal charges: (1) federal constitutional law; (2) statutory discovery rights under Article 39.14; and (3) the subpoena procedure under Article 24.03. We briefly review each.

The several protections found in the federal constitution while potent, do not give a defendant the "general right to discovery" of all evidence in the State's possession. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one[.]"); *Pena v. State*, 353 S.W.3d 797, 809 (Tex.Crim.App. 2011) (citing Supreme Court authority for proposition that "*Brady* essentially created a federal constitutional right to certain minimal discovery"). Yet under *Brady v. Maryland* the State, as a matter of due process, is required to disclose evidence "favorable to an accused . . . if the evidence is material to the accused's guilt or punishment." *Ex parte Chaney*, 563 S.W.3d 239, 266 (Tex.Crim.App. 2018), *citing Brady v. Maryland,* 373 U.S. 83, 87 (1963).

"Favorable evidence includes exculpatory evidence and impeachment evidence." *Ex parte Chaney*, 563 S.W.3d at 266, *citing United States v. Bagley*, 473 U.S. 667, 676 (1985). Relevant here, impeachment evidence includes that which tends to discredit the testimony of witnesses for the State. *See Giglio v. United States*, 405 U.S. 150, 154-55 (1972). And under *Brady*, evidence is "material" when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (internal quotation marks omitted). So, no actionable *Brady* violation occurs "unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Id.* at 281.

9

The Sixth Amendment provides a separate right to compulsory process that guarantees "criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt." *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987). As we recently explained:

> [T]he Sixth Amendment right to compulsory process 'is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies.' *Coleman v. State*, 966 S.W.2d 525, 527 (Tex.Crim.App. 1998). 'The Sixth Amendment does not guarantee, however, the right to secure the attendance and testimony of any and all witnesses; rather, it guarantees only compulsory process for obtaining witnesses whose testimony would be both material and favorable to the defense.' *Id.* at 527-28. To exercise the federal constitutional compulsory process right, the defendant must make a plausible showing to the trial court, by sworn evidence or agreed facts, that the witness testimony sought would be both material and favorable to the defense. *Id.* at 528.

*In re State*, 599 S.W.3d 577, 598-99 (Tex.App.--El Paso 2020, orig. proceeding); *see also Emenhiser v. State*, 196 S.W.3d 915, 921 (Tex.App.--Fort Worth 2006, pet. ref'd) (The right to compulsory process gives defendants "the right to secure *the attendance* of witnesses whose testimony would be both material and favorable to the defense.") (emphasis supplied).

Texas also adds a statutory avenue of discovery in Article 39.14 of the Code of Criminal Procedure. Two subsections of that article are urged by the parties. The State is required under Article 39.14(h) to "disclose to the defendant any exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, or control of the state that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged." TEX.CODE CRIM.PROC.ANN. art. 39.14(h). And under Article 39.14(a), *upon request*, the State is required to disclose to the defense any documents and other materials "not otherwise privileged that constitute or contain evidence *material* to any matter involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state." *Id.* at

10

39.14(a) (emphasis supplied).

The other Texas statutory provision at issue here is the authorization for subpoenas for a person found in Article 24.03, and for tangible items found in Article 24.02. Read together, the provisions authorize the issuance of a subpoena (and subpoena duces tecum) through an application to the district clerk that attests that the testimony would be "material to the State or the defense." TEX.CODE CRIM.PROC.ANN. art. 24.03(a). Issuance of the subpoena is a matter of right on written application identifying the witness and on assertion that the testimony sought is material to the State or the defense. *Id*.; *Shpikula v. State*, 68 S.W.3d 212, 221 (Tex.App.--Houston [1st Dist.] 2002, pet. ref'd). Thus, the guiding standard is whether the subpoena sought documents "material to the . . . defense."[7]

Other than for Article 39.14(h), each of these evidence gathering avenues require that the witness or evidence sought is "material." Given the significance of that standard in all these relevant discovery tools, we digress to address an intervening change in our understanding of that term as used in Article 39.14.

### E. Watkins v. State

As we were close to issuing our decision in this case, the Texas Court of Criminal Appeals handed down its decision in *Watkins v. State*, 619 S.W.3d 265 (Tex.Crim.App. 2021). The issue in that case was whether the State failed in pre-trial discovery to turn over to the defense a series of exhibits that it later admitted into evidence at trial. *Id*. at 268. That question turned on whether the exhibits were "material to any matter involved in the action" as that phrase is used in Article 39.14(a). The court ultimately concluded that "[e]vidence is 'material' if it has 'some logical connection to a consequential fact.' Whether evidence is 'material' is therefore determined by

---

[7] The City argued below that Relator would also need to show "good cause" for issuance of a subpoena duces tecum. We do not find that requirement in the statute.

11

evaluating its relation to a particular subject matter rather than its impact upon the overall determination of guilt or punishment in light of the evidence introduced at trial." *Id.* at 269.

Much of the *Watkins* opinion focuses on statutory construction because the court was construing the phrase "material to any matter involved in the action" as the legislature used that phrase in the 2013 Michael Morton Act. *Id.* at 269. That same phrase had appeared in an earlier version of Article 39.14, and the State urged that the legislature would have known of the courts' prior interpretation of that term and intended the same interpretation to be carried forward. *Id.* That earlier interpretation included some of the same root cases that underpin the State's claimed definition for materiality here.[8] The *Watkins* court, however, rejected that argument, reasoning that:

> On the whole, this Court's jurisprudence in this area focused on whether a conviction could be reversed because of a trial court's discretionary call to refuse to order disclosure, rather than on whether particular evidence could be categorized as 'material to any matter involved in the action.' There had not been an authoritative decision by the Court regarding the meaning of the phrase at the time the Michael Morton Act was passed.

*Id*. at 288. Accordingly, the *Watkins* court, applying rules of statutory construction and using the ordinary meaning of the terms, concluded that "material" means "'having a logical connection to a consequential fact' and is synonymous with 'relevant' in light of the context in which it is used in the statute." *Id*. at 290. That definition of materiality significantly differs from "indispensable" or probably causing "a different outcome" as urged by the State to this Court and the trial court

---

[8] In its brief to this Court, for instance, the State cites *Branum v. State*, 535 S.W.3d 217, 224-25 (Tex.App.–Fort Worth 2017, no pet.) for the proposition that mandatory disclosure under article 39.14(a) requires that the evidence must be "indispensable to the State's case" or must provide a reasonable probability that its production would result in a different outcome. *Branum* cites *In re Hawk*, No. 05-16-00462-CV, 2016 WL 3085673, at *2 (Tex.App.--Dallas May 31, 2016, orig. proceeding) for that proposition, which in turn relies on *Ehrke v. State*, 459 S.W.3d 606, 611 (Tex.Crim.App. 2015). *Ehrke* relies on three cases which *Watkins* discusses at length, and which it concludes do not affix that meaning to "material" under Article 39.14: *Quinones v. State*, 592 S.W.2d 933, 941 (Tex.Crim.App. 1980); *McBride v. State*, 838 S.W.2d 248, 251 (Tex.Crim.App. 1992); and *Detmering v. State*, 481 S.W.2d 863, 864 (Tex.Crim.App. 1972).

12

below.

### III. DISCUSSION

Hernandez' mandamus turns on whether she has shown that with respect to the remaining portion of the order, the trial court was required to uphold the subpoena under one or more of the five theories advanced in her mandamus petition: (1) due process rights under *Brady*; (2) Sixth Amendment right to compulsory process; (3) Sixth Amendment right to effective assistance of counsel; (4) Articles 24.02-.03; and (5) the Michael Morton Act, TEX.CODE CRIM.PROC.ANN. art. 39.14(h). We find that the trial court was not compelled under the law existing at the time of the order to allow the subpoena, or at least the record does not support that argument. However, we allow for the possibility that Hernandez may be able to press her claim anew in light of *Watkins*, and nothing in this opinion should foreclose that possibility.

#### A. The Mandamus Record Cannot Support Relief

The mandamus record precludes any meaningful inquiry into the materiality of the course materials, regardless of how materiality is defined. First, we do not have a transcript of the *Daubert* hearing where Officer Melero set out his opinions, and presumably his rationale for them. Accordingly, even if we had the lesson plans before us (which we do not), we would have no basis to know how the lesson plans relate to the expert's methodology. For instance, do any of the lesson plans address whatever time and distance formulas that Officer Melero may rely on, if he does? Do they address the coefficient of friction essential to stopping distance, if indeed Officer Melero utilizes a coefficient of friction? Nothing in our record allows us to even ponder a guess. And more pointedly, even though the parties discussed an in camera review of the documents which the City brought to the hearing, there is no indication the trial court reviewed the lesson plans, nor were they included under seal in our record. That fact presents its own problems.

A trial court cannot exercise its discretion in the absence of evidence. *See In re Berrenberg*, 605 S.W.3d 922, 927 (Tex.App.--El Paso 2020, orig. proceeding) (holding, in civil context, that trial court abuses its discretion when it limits discovery in the absence of substantiating evidence in the record). Both the United States Supreme Court and the Texas Court of Criminal Appeals have held that when the defense requests access to confidential or privileged information, the trial court should conduct an in camera inspection of the materials prior to ordering disclosure of the information. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 60-61 (1987); *Thomas v. State*, 837 S.W.2d 106, 113-14 (Tex.Crim.App. 1992). "[W]hen a party seeks to compel the production of confidential or privileged documents, the trial court is required to conduct an in camera inspection of those documents prior to ordering their disclosure." *In re Moore*, 615 S.W.3d 162, 169 (Tex.App.--Austin 2019, orig. proceeding) (trial court erred in failing to review claimed confidential portions of personnel files prior to ruling on whether they could be disclosed).

We do not hold, however, that the trial court abused its discretion in failing to conduct an in camera review. Colloquy between the court and Relator's counsel suggest that trial court based her materiality determination at least in part on the failure of Relator to raise the issue of these specific documents at the time of the *Daubert* hearing:

> THE COURT: So I'm having a little trouble with the fact that you felt it was not necessary to have those documents when we actually went through the *Daubert* hearing, if they were so essential and so relevant and so material, why those weren't necessary and you did not show that they were necessary at the *Daubert* hearing.

At another point, the trial court noted its request that any materials were to be delivered prior the hearing so she would have the chance to review them:

> THE COURT: If something's been handed to the Court staff, given to the Court, I have not seen anything. It's not my understanding. Part of the idea was if we were going to be in an in-camera review session, I had requested if they would be produced to me Thursday morning because we were going to have this matter in the afternoon. That way we could move on any potential, I guess, disclosure. But that -- as far as I know, that didn't happen and I didn't receive anything.

14

We cannot say from our record who failed to meet that deadline. It is enough to say here, however, that while we deny the petition for mandamus as presented, if the issue is raised again below, that the trial judge will appropriately review the requested items to make the materiality determination.

### B. No Error Under Federal Constitutional Principles

As noted above, both *Brady* and the Sixth Amendment right to compulsory process incorporate a materiality standard. As a matter of federal law, their materiality standard is not affected by *Watkins* statutory construction of that term in Article 39.14. Based on the problems with the record, and the lack of distinct briefing in the mandamus petition on each of the constitutional claims asserted, we decline to find that the trial court was compelled to uphold the subpoena under those theories.[9] For example, under the Sixth Amendment's compulsory process clause, "the defendant must make a plausible showing to the trial court, by sworn evidence or agreed facts, that the witness' testimony would be both material and favorable to the defense." *Coleman v. State*, 966 S.W.2d 525, 528 (Tex.Crim.App. 1998). Without some proof in our record of what Officer Melero was proposing to testify to, and without the course material in our record, we cannot say Hernandez met that standard.

### C. No Error under Article 39.14(h)

Another basis asserted by Hernandez, Article 39.14(h), mandates the State "'shall' disclose to the defendant *any exculpatory, impeachment, or mitigating* document, item, or information in the possession, custody, or control of the state *that tends to negate* the guilt of the defendant or would tend to reduce the punishment for the offense charged." TEX.CODE CRIM.PROC.ANN. art.

---

[9] For example, Hernandez relies on the Sixth Amendment right to effective assistance of counsel as a basis for conducting discovery, but cites no case specifically articulating that as a basis to compel discovery prior to trial. Our own research reveals scant authority on that issue, and certainly none that supports the mandamus standard. *See U.S. v. Fernandez*, 231 F.3d 1240, 1247 (9th Cir. 2000) (raising but not deciding if right to effective assistance to counsel provides a right to discovery).

15

39.14(h) (emphasis supplied). Hernandez argues that by quashing her subpoena, "the trial court has absolutely prohibited [her] from having access to the lesson plans" which "are obviously relevant to this case" and as such, Hernandez "should have already received them under Tex. C. of Crim. Proc. art 39.14(h)," without "having to bother with asking for a subpoena duces tecum." In contrast to Articles 39.14(a) and 24.03, Article 39.14(h) does not require a showing of "materiality" before triggering its mandatory disclosure obligation. But, Article 39.14(h) applies only to a distinct category of evidence, i.e., evidence that is *favorable* to the defendant. While Article 39.14(h) imposes on the State an affirmative duty to disclose this type of evidence even without a formal request by a defendant, the evidence sought by Hernandez does not fall within a category of evidence that is "obviously" exculpatory, impeachment, or mitigating. Accordingly, we cannot say that the record supports a finding that the lesson plans were "obviously" subject to Article 39.14(h) mandatory disclosure prior to the issuance of the subpoena. Hernandez therefore fails to demonstrate the trial court was required to deny the motion to quash on this factual basis.

### D. Article 39.14(a) is not before us

Some of the parties' briefing addresses the materiality question as if an Article 39.14(a) request is at issue. But no Article 39.14(a) request for these records was made below. To invoke Article 39.14(a), a defendant must make a timely request. TEX.CODE CRIM.PROC.ANN. art. 39.14(a). Our record contains Relator's pleading styled "Formal Request for Compliance with Article 39.14 of the Texas Code of Criminal Procedure" which seeks nine specific categories of documents. None of those categories explicitly request the lesson plans, nor even more broadly seek documents "material to any matter involved in the action." And that pleading was not urged below as the basis for the subpoena. Nothing in our opinion would therefore address a properly made Article 39.14(a) request for the lesson plans, should one be made.

**E. Existing Precedent Supported Quashing the Article 24.03 Subpoena but that Order May be Revisited**

Hernandez complied with the procedural requisites of Article 24.03 in her written application for the subpoena filed with the clerk; the application contained the required statutory language. However, the State essentially argued in its motion to quash the subpoena that Articles 24.01- 24.03 are unavailable to a defendant for the purpose of obtaining pretrial discovery. Instead, according to the State, a defendant's statutory subpoena power serves only to protect a defendant's *trial* right to Confrontation under the Sixth Amendment, which does not guarantee "the right to secure the attendance and testimony of any and all witnesses; rather, it guarantees only compulsory process for obtaining witnesses whose testimony would be both *material and favorable* to the defense." *Coleman v. State*, 966 S.W.2d 525, 527-28 (Tex.Crim.App. 1998), *citing United States v. Valenzuela-Bernal*, 458 U.S. 858, 866-67 (1982) (emphasis supplied).

In addition, the State relied on caselaw establishing the trial court has discretion when determining whether and to what extent the defendant is entitled to pretrial discovery not voluntarily provided by the State. Indeed, at the time the trial court quashed the subpoena in this case it was sometimes stated that "Article 39.14 prescribe[d] the *exclusive* manner by which a defendant may obtain pretrial discovery[.]" *See Shpikula v. State*, 68 S.W.3d 212, 222 (Tex.App.--Houston [1st Dist.] 2002, pet. ref'd) (emphasis supplied). Moreover, an attempt to circumvent Article 39.14 through a defendant's subpoena power was subject to challenge by the State-- the merits of which was decided by the trial court using its discretion. *See Luvano v. State*, 183 S.W.3d 918, 924 (Tex.App.--Eastland 2006, no pet.) ("A subpoena duces tecum is not to be used as a discovery weapon but as an aid to discovery based upon a showing of *materiality and relevance* . . . . If a showing of *materiality* is not made, it is proper for the trial court to quash the subpoena.") (emphasis supplied), *citing Ealoms v. State*, 983 S.W.2d 853, 859 (Tex.App.--Waco

17

1998, pet ref'd)).

Whether any of these decisions which turned in part on materiality and relevance grounds survive *Watkins v. State* is unclear. The court in *Watkins* relied heavily on the fact the Michael Morton Act[10] "overhauled" Article 39.14 to "broaden criminal discovery for defendants, making disclosure the rule and non-disclosure the exception." *Watkins*, 619 S.W.3d at 277. But the Michael Morton Act left Article 24.03 untouched, and *Watkins* does not provide guidance as to whether existing precedent interpreting *its* materiality provision--"material to the defense"--requires re-examination. Because that question has not been adequately briefed in this proceeding, we decline to address it at this time.[11]

What we can say is that either an accused or the State generally may use a subpoena to compel a witness (or witness with documents) to attend a pretrial Rule 702 hearing. In a sur-reply brief, the State urges that this Court in *In re State*, 599 S.W.3d 577 (Tex.App.--El Paso 2020, orig. proceeding) has already held that "the subpoena duces tecum process and the pretrial-discovery process serve very different purposes and have different rules and requirements, and a criminal defendant cannot properly use the subpoena process to obtain pretrial discovery from the State." What we actually held in *In re State* was that a defendant could not issue a subpoena requiring the complaining witness to produce tangible evidence (there, a cellphone) directly to defense counsel and untethered to any hearing. *Id*. at 594-95. We did not foreclose the possible use of a subpoena

---

[10] *See* The Michael Morton Act, 83rd Leg., R.S., ch. 49, § 3, 2013 TEX.GEN.LAWS 106, 108.

[11] Article 39.14(a) requires the State to produce certain designated items "material to any matter involved in the action" while Article 24.03 permits subpoenas for items "material to the State or to the defense." *Cf.* TEX.CODE CRIM.PROC.ANN. arts. 39.14(a) and 24.03. The parties have not briefed whether there is a meaningful difference between the two, and we choose not to decide it in the abstract. *See Greene v. Gregg*, 520 S.W.2d 924, 926 (Tex.App.--Tyler 1975, no pet.) ("The law is well settled in this state that courts are created not for the purpose of deciding abstract questions of law or rendering advisory opinions, but for the judicial determination of presently existing disputes between parties in relation to facts out of which controverted questions arise."). But assuming, without deciding that both these statutory phrases share a common meaning, a court has yet to also decide whether the lesson plans have a connection to a consequential fact in this case.

to compel a witness to attend a duly set pretrial hearing. *Id*. at 593 ("The plain language of [Article 24.02] only allows a party to apply for a subpoena that compels a witness to attend a hearing and bring with him or her an item or thing to the hearing that is explicitly mentioned."); *see also* TEX.CODE CRIM.PROC.ANN. art. 28.01, § 1(8) (permitting a trial court to set a pretrial hearing to resolve discovery issues). Given the significance of experts to many cases, and possibly here, Relator had every right and reason to compel the attendance of a witness who could assist with that inquiry. No doubt, courts have rebuffed efforts to use subpoenas not connected to any actual hearing. *In re State*, 599 S.W.3d at 594-95 (defendant improperly subpoenaed witness to produce cell phone to defendant's counsel outside of court); *Shpikula*, 68 S.W.3d at 222 (Article 24.03 did not permit defendant to subpoena intoxilyzer data at defendant's counsel's office when no trial was set). That was not, however, the situation here.

But we can also say that when entering its order in this case, the trial court likely could have relied on the interpretation of the term "material" found in existing precedent when it determined Hernandez could not use a subpoena to obtain lesson plans within the custody and control of the State. Consequently, under these circumstances, we cannot say the trial court acted without authority at the time it entered its order. We do so, however, without prejudice to Hernandez seeking the records through a properly set hearing and in conformity with this opinion.

### F. The Trial Court Acted Within Its Authority in Granting the Protective Order, but that Order May be Revisited

The only portion of the protective order that remains is a prohibition on Hernandez from issuing further "repeated subpoenas" for any other information and records linked or identifiable to Officer Melero. Hernandez argues this discovery limitation impedes her ability to utilize subpoenas as she deems necessary and therefore is unauthorized.

The right to issue subpoenas is not absolute. A person may challenge a subpoena by filing

a motion to quash or a motion for protective order. *See* TEX.CODE CRIM.PROC.ANN. art. 39.04 ("rules prescribed in civil cases for issuance of . . . subpoenaing witnesses . . . as to the manner and form of taking and returning the same. . . govern in criminal actions, when not in conflict with this Code."); *see also* TEX.R.CIV.P. 192.6 ("A person from whom discovery is sought, and any other person affected by the discovery request, may move . . . for an order protecting that person from the discovery sought.")

And a trial court is permitted to issue a protective order in connection with the issuance of subpoenas to protect a movant from "undue burden, unnecessary expense, harassment, annoyance, or invasion of personal, constitutional, or property rights[.]" TEX.R.CIV.P. 192.6(b)(4). In that regard, a "court may make any order in the interest of justice and may--among other things--order that[] . . . the discovery be undertaken only by such method or upon such terms and conditions or at the time and place directed by the court." *Id*. Moreover, a trial court does not act outside its authority when it sets reasonable conditions on compliance with a subpoena. *See* TEX.R.CIV.P. 176.7 ("The court may impose reasonable conditions on compliance with a subpoena, including compensating the witness for undue hardship."). Because the order here applies to "repeated subpoenas" of a single witness, we believe the standard by which the trial court will measure whether Hernandez is wielding her subpoena power in an abusive way as to Officer Melero in the future is reasonable. For us, the trial court's order does not raise a concern that justifies the grant of a mandamus at this time.

Moreover, contrary to Hernandez's contention, the current protective order does not prohibit her from issuing a subpoena with respect to Officer Melero altogether, if the subpoena is indeed necessary, it merely adds one more step prior to its issuance. If Hernandez believes an Officer Melero-related subpoena is necessary, she can move the trial court to lift the protective

20

order. As the trial court's order does not operate as an absolute bar to issuing such a subpoena, imposing the additional procedural safeguard to protect the State and this witness from abusive process does not alone establish the trial court stepped outside its bounds of authority.

In addition, Hernandez has not yet moved the trial court to lift the protective order for the purpose of issuing a Officer Melero-related subpoena. As there is no order denying the request, whether Hernandez is unable to issue a necessary subpoena as to Officer Melero is not ripe for mandamus review. *See In re Perritt*, 992 S.W.2d 444, 446 (Tex. 1999)("A party's right to mandamus relief generally requires a predicate request for some action and a refusal of that request.").

In sum, the trial court's amended order permits Hernandez to freely issue all her subpoenas in accordance with the rules--except when it comes to one witness, Officer Melero. Because the limitation imposed as to Officer Melero is narrowly tailored and does not create an absolute bar to issuing the subpoena, it is not action for which a writ of mandamus lies. As Hernandez fails to demonstrate she is entitled to mandamus relief with respect to the trial court's order granting the motion to quash or the protective order, we deny relief as to Issue One.

### G. Subpoena Preclearance

In Issues Two, Three, and Four, Hernandez contends that the trial court acted without authority by imposing the subpoena preclearance requirement on her in contravention to TEX. CODE CRIM. PROC. ANN. arts. 24.01 through 24.03. However, the trial court's amended order removes the subpoena preclearance requirement and has extinguished any live controversy between the parties on this point. Issues Two, Three, and Four are overruled as moot.

## IV. CONCLUSION

Relator's Issues Two, Three, and Four, all of which relate to the "pre-clearance" aspect of

21

the trial court's original order are moot. We deny mandamus that relate to the El Paso Police Department's lesson plans because (1) we have no record from the expert's *Daubert* hearing describing his methodology and no copy of the lesson plans (or even a description of them) so as to evaluate their potential materiality; and (2) as explained above, the trial court has not been shown to have violated clear precepts of law existing at the time of the entry of the order. We note, however, that neither the trial court, nor this Court have analyzed the discovery issues in light of *Watkins v. State* (and no issue under Article 39.14(a) was asserted below, nor resolved on appeal). Nothing in this opinion is intended to foreclose those issues being raised below.

JEFF ALLEY, Justice

July 30, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.

(Do Not Publish)